MOBILE &. O. R. Co. *v.* SESSIONS and others, Railroad Com'rs.

*(Circuit Court, S. D. Mississippi.   September 1, 1886.)*

1. RAILROAD COMPANIES—STATE REGULATION OF CHARGES—ACT MISS. 1884.
    The plain construction of the Mississippi act of March 11, 1884, is that it was the intention of the legislature to confer upon the railroad commission the power to control all rates for the transportation of goods, wares, and merchandise from points within the state to points without the state, and from points outside of the state to points inside of the state; otherwise such transportation would have been included in the exception of the amendatory act of March 15, 1884.[1]

2. SAME—REGULATION OF INTERSTATE COMMERCE.
    The transportation of goods, wares, and merchandise from one state to another constitutes commerce among the several states, and a regulation thereof by the railroad commission of the state of Mississippi, under the act of March 11, 1884, is in violation of article 1, § 8, par. 3, Const. U. S.[1]

3. SAME—RELIEF IN EQUITY.
    The attempt of the railroad commission, in this case, to force upon the Mobile & Ohio Railroad Company the adoption of the tariff of rates, freight rules, and regulations and classifications of freight in respect to the rate to be charged for the transportation of goods, wares, and merchandise from points within the state to points outside of the state, and from points without the state to points inside of the state, presents such a case as authorizes a court of equity to grant relief therefrom.

In Equity.

*E. L. Russell* and *Frank Johnston,* for complainant.

*T. Marshall Miller,* Atty Gen., for respondents.

HILL, J.    The complainant has filed its bill against the defendants, who constitute the railroad commission for this state.    The commission is acting under the authority of the act of March 11, 1884, and, as such commission, have adopted and promulgated the rules, orders, and schedules of charges for the transportation of freights, etc., over complainant's said railroad, as hereinafter set forth and referred to.    The bill seeks to enjoin the defendants from enforcing such rules, orders, and charges for freights, as set forth in the schedule exhibited with the bill, so far as the same relate to freight shipped from points within this state to points without this state, or from points without this state to points within this state, for the alleged reason that the said orders, etc., are in conflict with and in violation of article 1, § 8, par. 3, Const. U. S.    The order of the railroad commission is as follows:

[1] See note at end of case.

"JACKSON, MISS., July 20, 1886.

"Ordered that the rates for transportation of freight on the Mobile & Ohio Railroad, as set forth in circular No. 15, be, and the same are hereby, established as the maximum rates for said company, to take effect on the fifteenth day of August, 1886, and to be operative and in force from and after that date. Said circular is hereby ordered to be recorded, and a certified copy of said rates, together with the rules and regulations and the classifications adopted by the commission, are directed to be forwarded by the clerk to said railroad company; said rates to be governed by said classifications, and to be used in connection with and subject to the said rules and regulations."

The ninth rule, the one complained of, reads as follows:

"Any railroad company chartered under the laws of this state, and operating therein, whose line extends beyond the limits of this state, shall, as to freight shipped from points without the state to points within the state, or as to that which is carried from points within to points without the state, make no discrimination or charges on any part of its line against the shipper or consignee within the state; but the amount charged by any such company for transportation over any part of its line within this state shall bear the same proportion to the amount as such part of the line does to the entire distance carried, and shall not exceed the maximum rates fixed by this commission for such railroad company."

The schedule of rates to be charged for the transportation of freights over the complainant's road, to take effect and to go into operation on the fifteenth day of August, 1886, prescribes rates for distances from 10 to 500 miles; that is, from Mobile, in the state of Alabama, to Cairo, in the state of Illinois. The act of the legislature of this state of March 11, 1884, under which these rules, regulations, and orders were made, imposes severe penalties for their non-observance and violation. This act, as amended by the act of March 15, 1884, exempts from its operation transportation from points in one state, passing through this state, to points in other states. The plain construction of the act, to my mind, is that it was the intention of the legislature to give the commission control of all rates for transportation from points within this state to points without this state, or from points without this state to points within this state; otherwise such transportation would have been included within the exception.

The first question is, does transportation upon a railroad passing through more states than one, or from a point in one state to a point in another, constitute commerce; and, if so, is it commerce between the states? That such transportation is commerce, and commerce between the states, has been uniformly held both by the supreme court of the United States, and by the supreme courts of a number of the states. *State Freight Tax Case,* 15 Wall. 281; *Welton* v. *Missouri,* 91 U. S. 275; *Railroad Co.* v. *Husen,* 95 U. S. 465; *Hall* v. *De Cuir,* Id. 485; *Mobile Co.* v. *Kimball,* 102 U. S. 691; *Telegraph Co.* v. *Texas,* 105 U. S. 464; *Head-money Cases,* 112 U. S. 591; S. C. 5 Sup. Ct. Rep. 247; *Gloucester Ferry Co.* v. *Pennsylvania,* 114 U. S. 203; S. C. 5 Sup. Ct. Rep. 826; *Stone* v. *Farmers' Loan &*

*Trust Co.*, 116 U. S. 333; S. C. 6 Sup. Ct. Rep. 334, 388, 1191; *Pickard* v. *Pullman Southern Car Co.*, 117 U. S. 43; S. C. 6 Sup. Ct. Rep. 635. The same conclusion has been reached by eminent judges of the United States sitting in the various circuits, upon exactly the same state of facts as the case under discussion; and the correctness of these decisions seem to me to be beyond question. See *Kaeiser* v. *Illinois Cent. R. Co.*, 18 Fed. Rep. 151; *Pacific Coast S. S. Co.* v. *Railroad Com'rs*, Id. 10; *Louisville & N. R. Co.* v. *Railroad Com'rs of Tennessee*, 19 Fed. Rep. 688.

The next question is, does the state of Mississippi, by the act of the legislature, or through its commission, have the power to regulate, by fixing charges for such transportation, such commerce as that specified in rule 9 above set out? That this power is vested solely in congress by article 1, § 8, par. 3, of the constitution of the United States, is, in my opinion, equally well settled by numerous decisions of the supreme court of the United States, including those above cited, and commencing with *Gibbons* v. *Ogden*, 9 Wheat. 231, and including *Walling* v. *Michigan*, 116 U. S. 446, S. C. 6 Sup. Ct. Rep. 454, and *Pickard* v. *Pullman Southern Car Co.*, 117 U. S. 34, S. C. 6 Sup. Ct. Rep. 635, and by the supreme courts of a number of the states of high authority. *Railroad Com'rs* v. *Charlotte, C. & A. R. Co.*, in MSS.; *Hardy* v. *Atchison, T. & S. F. R. Co.*, 5 Pac. Rep. 6, (Sup. Ct. Kan.;) *Carton* v. *Illinois Cent. R. Co.*, 59 Iowa, 148; S. C. 13 N. W. Rep. 67. I have been referred by the able attorney general of the state to but two decisions to the contrary, one being the case of *Peik* v. *Chicago & N. W. Ry. Co.*, 94 U. S. 164, and *Stone* v. *Yazoo & M. V. R. Co.*, 62 Miss. 607.

The case of *Peik* v. *Chicago & N. W. Ry. Co.* is that mainly relied upon to sustain this statute and the action had thereunder by the commission. The decision in the *Peik Case*, like all other decisions made by the courts, must depend upon and be confined to the facts upon which it was based. The facts in the *Peik Case* were as follows: There was a line of railroad in the state of Wisconsin formed by a consolidation of different roads, which, when chartered, were subject to the constitution of that state then in force, and which provided that all acts for the creation of corporations within the state might be altered or repealed by the legislature at any time after their passage. This line of railroad was consolidated with a line of railways created by the legislature of Illinois, in that state, and, as a part of the terms of the consolidation, it was agreed that the consolidated company should be subject to the laws in each state, as though the consolidation had not taken place, and which was an agreement upon the part of the Illinois corporation to be governed by the laws of Wisconsin so far as anything was done in that state, and, under the laws of Wisconsin, the legislature had the right to alter, modify, or repeal the charter, or do anything it might choose in relation to said corporation in that state. All

that this case decides is that the above-stated facts constituted the contract between the parties, and that the Illinois corporation must abide by it. The chief justice, in delivering his opinion, states that, "until congress acts in reference to the relations of this company to interstate commerce, it is certainly within the power of Wisconsin to regulate its fares, etc., so far as they are of domestic concern." There is nothing contained in the charters of the different states creating the complainant corporation authorizing any of the other states to regulate the rates of charges in such states. The *Peik Case*, standing upon its peculiar facts, is not, in my opinion, a controlling decision in this case, if there had been no conflicting rulings by the supreme court since that decision was rendered. I am satisfied with the numerous decisions of the supreme court decided since the *Peik Case*, holding that congress alone can pass laws regulating commerce between the states, and that in the absence of such legislation, it must be held that such commerce is intended by congress to remain free from state control.

The other case relied upon by the defendants is that of *Stone* v. *Yazoo & M. V. R. Co.*, 62 Miss. 607. While I entertain for the supreme court of this state, and especially the learned chief justice, who delivered the opinion of the court in that case, the highest regard, I am unable to concede that the principles announced in that case control the facts in this. In *Stone* v. *Yazoo & M. V. R. Co.* the main question was as to whether or not the charter was such a contract as prohibited the commission from regulating its rates while within the maximum fixed by its charter. The court held that it was, so that the question of interstate commerce was one not necessary to be decided. The Yazoo & Mississippi Valley Railroad is wholly within the state of Mississippi, and consequently within the legislative control of the state, except so far as the state had, by its contract, parted with this right. The question here presented was before the supreme court of the United States in the case of *Stone* v. *Farmers' Loan & Trust Co.*, 116 U. S. 307, S. C. 6 Sup. Ct. Rep. 334, 388, 1191, and upon this question, Chief Justice WAITE, in delivering the opinion of the court, stated that—

"The commission is in express terms prohibited by the act of March 15, 1884, from interfering with the charges of the company for the transportation of persons or property through Mississippi from one state to another. The statute makes no mention of persons or property taken up without the state, and delivered within, nor of such as may be taken up within and carried without. As to this, the only limit on the power of the commissioners is the constitutional authority of the state over the subject. Precisely all that may be done, or all that may not be done, it is not easy to say in advance. The line between the exclusive power of congress and the general powers of the state in this particular is not everywhere distinctly marked, and it is always easier to determine, when a case arises, whether it falls on one side or the other, than to settle in advance the boundary, so that it may be in all respects strictly accurate. *As yet the commissioners have done nothing.* There is certainly much they may do in regulating charges within

the state which will not be in conflict with the constitution of the United States. It is to be presumed that they will always act within the limits of their constitutional authority. It will be time enough to consider what may be done to prevent it when they attempt to go beyond."

That case is the same on this point with the present case, except the names of the parties, and the further fact that the commission had done nothing of which complaint could be made before the filing of the bill in the case of *Stone v. Farmers' Loan & Trust Co.* In the case of *Stone v. Farmers' Loan & Trust Co.*, the commission had not attempted to fix the rates, or, indeed, to do anything, and I infer that it was for this reason that the court did not pass upon the question, but pretermitted it until the commissioners should take some action violative of the provisions of the constitution of the United States, or, at least, which might raise that question. In the case at bar the commission has taken action, and adopted a rule fixing the rates of charges, or tariff of charges, not only for transportation over the road in this state, but through all the states through which said line of railroad passes. It is true, an attempt is made to qualify it, and restrict it to transportation through the state; but, when examined, it extends to the entire line. This is the effect and purpose of it.

It is claimed that if a bale of cotton was shipped upon a schedule allowing $2 for 150 miles of road in this state, and 50 cents a bale for 150 miles in another state, then only $1.25 shall be paid for the transportation in this state, although the tariff rates fixed by the commission allowed $2. This is certainly regulating the freight charges in this state by what is done in another state, when there may have been a valid reason for the low rate in another state. It is to enforce a penalty for that which is done without the state.

Again, owing to the heavy cuts and fills, and the number of bridges to be built and kept up in this state, the cost may be twice as much as that portion of the road in another state; yet, because a less rate is charged over that part of the line, the rates in this state must be reduced one-half less than what would be reasonable according to the cost in this state.

But, aside from all this, I am satisfied that the transportation of freights embraced under rule 9 is interstate commerce, and within the exclusive regulation of congress, and that, if no action has been had by congress in relation to interstate commerce, the inference is that congress intends that it shall remain free from state regulation. I am of opinion that, if the same action had been taken by the commissioners in the case of *Stone v. Farmers' Loan & Trust Co.*, 116 U. S. 307, S. C. 6 Sup. Ct. Rep. 334, 388, 1191, that has been done by the defendants as such commissioners before the filing of this bill, that the supreme court of the United States in that case would have declared the act, and the action of the commissioners under it, to have been in conflict with article 1, § 8, par. 3, of the constitution of the United States, and would have perpetuated the injunction

granted by this court. So believing, and upon the reasons above stated, the injunction will be granted as prayed for in the motion.

The clear presentation of the points involved, by the distinguished and able counsel on both sides, has greatly aided me in arriving at the above conclusion.

### NOTE.

RIGHT OF STATE TO REGULATE RAILROAD COMPANIES. A state has power to limit the amount to be charged by railroad companies for the transportation of persons and property within its own jurisdiction, and otherwise to control and regulate such companies, Stone v. Farmers' L. & T. Co., 6 Sup. Ct. Rep. 334; S. C. 20 Fed. Rep. 270; Stone v. Illinois Cent. R. Co., 6 Sup. Ct. Rep. 348; S. C. 20 Fed. Rep. 468; Stone v. New Orleans & N. E. R. Co., 6 Sup. Ct. Rep. 349; Ruggles v. People, 2 Sup. Ct. Rep. 832; Illinois Cent. R. Co. v. State, Id. 839; Louisville & N. R. Co. v. Railroad Com'rs, 19 Fed. Rep. 679; Denver & N. O. R. Co. v. Atchison, T. & S. F. R. Co., 15 Fed. Rep. 650; Rae v. Grand Trunk Ry. Co., 14 Fed. Rep. 401; Tilley v. Savannah, F. & W. R. Co., 5 Fed. Rep. 641; Scofield v. Lake Shore & M. S. Ry. Co., (Ohio,) 3 N. E. Rep. 907; Providence Coal Co. v. Providence & W. R. Co., (R. I.) 4 Atl. Rep. 394; but not when what is done or attempted to be done would amount to a regulation of foreign or interstate commerce, Stone v. Farmers' L. & T. Co., 6 Sup. Ct. Rep. 334; S. C. 20 Fed. Rep. 270; Stone v. Illinois Cent. R. Co., 6 Sup. Ct. Rep. 348; S. C. 20 Fed. Rep. 468; Stone v. New Orleans & N. E. R. Co., 6 Sup. Ct. Rep. 349; In re Koehler, 25 Fed. Rep. 73; Louisville & N. R. Co. v. Railroad Com'rs, 19 Fed. Rep. 679; Brown v. Memphis & C. R. Co., 5 Fed. Rep. 499; Hardy v. Atchison, T. & S. F. R. Co., (Kan.) 5 Pac. Rep. 6; nor when such regulation would conflict with some contract in the charter of the company, Stone v. Farmers' L. & T. Co., 6 Sup. Ct. Rep. 334; S. C. 20 Fed. Rep. 270; Stone v. Illinois Cent. R. Co., 6 Sup. Ct. Rep. 348; S. C. 20 Fed. Rep. 468; Stone v. New Orleans & N. E. R. Co., 6 Sup. Ct. Rep. 349.

A grant, in general terms, of authority to fix rates, is not a renunciation of legislative control so as to secure reasonable rates. Stone v. Farmers' L. & T. Co., 6 Sup. Ct. Rep. 334; S. C. 20 Fed. Rep. 270; In re Koehler, 23 Fed. Rep. 529.