## PURE OIL CO. v. CORNISH et al.

No. 26106. Nov. 19, 1935.

Alvin Richards, for petitioner.

C. D. Cund, A. L. Herr, and C. W. King, for respondents.

OSBORN, V. C. J. This is an original action by the Pure Oil Company, as petitioner, against the Oklahoma Tax Commission, as respondent, wherein it is sought to obtain a writ of prohibition to prohibit respondent from proceeding to collect certain motor vehicle taxes from petitioner upon certain motor trucks operated by it upon the public highways of the state which respondent alleges are class "C" motor carriers as defined by law.

A stipulation of facts has been filed. It appears that petitioner is a corporation engaged in the business of acquiring oil and gas mining leasehold estates covering properties within the state of Oklahoma; producing, transporting, refining, and marketing petroleum, crude oil, and its refined products within the state of Oklahoma. On December 26, 1934, a notice was served upon petitioner by respondent to the effect that a hearing would be held on January 10, 1935, at the State Capitol for the purpose of computing certain taxes due the state from petitioner as a motor carrier. On the same date a subpoena duces tecum was served upon petitioner to bring before the commission all the "books, records, and papers showing the mileage traversed and the identity of motor vehicle equipment used by petitioner for the transportation of property between or through two or more incorporated cities or towns in furtherance of any private commercial enterprise."

The further facts are that petitioner owns a number of motor trucks which are operated over the highways of the state solely for the purpose of carrying oil field equipment; that said company owns no tank trucks and does not make deliveries of gasoline within the state; that its motor trucks are not operated for the purpose of carrying property belonging to any other person, firm, or corporation; that the said motor trucks are operated by petitioner in carrying property belonging to it and the trips ordinarily originate at a lease owned by petitioner and terminate at another lease or at a warehouse owned by petitioner, and in making said trips said motor trucks ordinarily pass through two or more incorporated cities or towns within the state of Oklahoma; that any and all trips made by said motor trucks belonging to petitioner over the highways of the state are trips necessary and incident to the carrying on and in furtherance of the business of the Pure Oil Company in the operation and development of its oil and gas leases.

It is contended by respondent that under the facts above stated the motor trucks operated by the petitioner are class "C" motor carriers, as defined by section 1, chapter 156, Session Laws 1933, and that petitioner is liable to the state for the payment of the mileage tax assessed by the provisions of said chapter. Petitioner contends that the motor vehicles operated by it are not class "C" motor carriers as defined by said act, and that consequently respondent, Tax Com-

mission, is wholly without jurisdiction to proceed to compute, levy, and assess against it the tax provided by said act.

The pertinent provisions of said act are as follows:

"(b) The term 'motor carrier,' when used in this act, means any person, firm, business, trust or corporation, lessee or trustee or receiver, operating any motor vehicle upon any public highway for the transportation of passengers or property for compensation or **for commercial purposes, doing an inter-city business** and not operating exclusively within the limits of an incorporated city or town within this state, and, for the purposes of this act, motor carriers shall be divided into three classes as follows:

"(1) Class 'A' motor carriers shall include all motor carriers operating as common carriers, of persons or property between fixed termini or over a regular route, even though there be periodic or irregular departures from said termini or route; and

"(2) Class 'B' motor carriers shall include all other motor carriers not operating as class 'A' or 'C' motor carriers, whether as private carriers for hire or common carriers for hire, of persons or property; and,

"(3) Class 'C' motor carriers shall include all other persons, firms or corporations, their trustees or receivers, engaged **in the transportation of property in furtherance of any private commercial enterprise and not operating** as a private carrier for hire or as a common carrier for hire, provided, however, the provisions of this act shall not apply to transportation of livestock and farm products in the raw state, logs and rough lumber and which raw state shall include cotton whether in the seed or ginned, cotton seed, hay, whether loose or baled, corn, wheat, oats and all other articles produced on the farm, from farm to market, nor to trucks hauling road materials."

It is noted that a class "C" motor carrier is defined as one "engaged in the transportation of property in furtherance of any private commercial enterprise." We must also consider the language contained in subsection B of section 1, "transportation of passengers or property for compensation or for commercial purposes, doing an inter-city business." When app'ied to the stipulated facts in this case, it is at once apparent that the language used in the act is vague and ambiguous. Ingenious arguments of law and fact are advanced by the parties hereto to substantiate their contentions as to the applicability of the language used to the facts presented herein. It is not readily or easily discernible as to whether the language used in defining class "C" motor carriers is sufficiently comprehensive to include the vehicles

operated by petitioner in the manner and for the purposes disclosed by the stipulated facts.

In order to determine the legislative intent in case of ambiguity, resort may be had to the history of the statute. Pennsylvania R. R. Co. v. International Coal Co., 230 U. S. 184, 33 S. Ct. 893, 57 L. Ed. 1446; United States v. St. Paul Ry. Co., 247 U. S. 310, 38 S. Ct. 525, 62 L. Ed. 1130; State v. Tarr (S. Dak.) 248 N. W. 200; Wheeler v. Board of Com'rs of Hopkinsville, 245 Ky. 388, 53 S. W. (2d) 740.

Attention is directed to chapter 113, S. L. 1923, which is the first legislative act imposing a mileage tax to be levied against motor carriers operating upon the public highways of the state. By that act the tax was applicable only to the "transportation of persons, freight and property for compensation."

The Legislature of 1929 enacted chapter 253, S. L. 1929, which broadened the scope of the act to include not only those who operated motor vehicles upon the public highways for compensation, but it was also sought to tax certain motor carriers who transported their own property over the public highways. By the latter act the motor carriers over which the state assumed control were divided into three classes known as class "A", "B", and "C." We are not concerned in this case with class "A" or "B" carriers, and therefore refer only to that portion of the act which defines class "C" motor carriers as follows:

"(3) Class 'C' motor carriers shall include all carriers which are operated by owners for the transportation of their own property, goods or merchandise who charge or collect from the consignee, purchaser, or recipient of such property, goods or merchandise for transporting or delivering same, provided, however, the provisions of this act shall not apply to transportation of livestock and farm products in the raw state and trucks hauling road materials."

We direct special attention to that portion of the statute which refers to the "consignee, purchaser, or recipient of property, goods or merchandise." There is evidenced a clear intention by this language that the act should apply only to those engaged in the barter, sale, or exchange of property, and it conclusively appears that said act would have no application to motor vehicles operated in the furtherance of an industry such as that engaged in by petitioner.

Following the enactment of chapter 253,

supra, this court was called upon to construe the same in Collins-Dietz-Morris Co. v. State Corporation Commission, 154 Okla. 121, 7 P. (2d) 123, 80 A. L. R. 561. In that case it was held that the act had no application where one engaged in the conduct of the wholesale grocery business sold and delivered groceries to retail merchants over the state, the cost of the delivery being included in the general overhead expense, and thereby augmenting to some extent the delivered price of the merchandise sold, but did have application to a case where a specific charge was made for delivery.

With this background, chapter 156, S. L. 1933, was enacted. It is quite evident that in the latter enactment the Legislature sought to cure what appeared to be a defect in the existing law. It was sought to amend the law so that one who sold and delivered his own merchandise might not escape the payment of a just and proper charge for the use of the highways in the furtherance of his business by including the cost of delivery within the selling price of his goods. In consideration of the facts surrounding the enactment of chapter 156, S. L. 1933, it becomes clear as to what the Legislature meant by the use of the terms "for commercial purposes, doing an inter-city business", and "in furtherance of any private commercial enterprise."

In this background and setting it is quite clear that the word "commercial" relates to buying, selling, and exchange in goods, wares, and merchandise in the general sales or traffic of our own markets. Ernshaw v. Cadwalader, 145 U. S. 247, 258, 12 S. Ct. 851, 36 L. Ed. 693. It is clear that the limitation on the word embraced within the purview of the phrase "doing an inter-city business" was intended to restrict the word "commercial" to a narrower sense than the broad meaning of "commerce."

"Statutes requiring or authorizing a levy of taxes are to be construed most strongly against the government and in favor of its citizens.

"Where a statute imposing a tax is susceptible of two constructions, if the legislative intention is in doubt, the doubt as a rule should be resolved in favor of the taxpayer." Campbell v. Cornish, 163 Okla. 213, 22 P. (2d) 63.

Counsel for respondent, in their brief, suggest that the court take judicial notice of the great hazard to public traffic and of the great damage and wear and tear on the highways caused by the heavily loaded trucks of oil companies hauling long trailers loaded with pipe, or trucks carrying engines, boilers or other excessively heavy materials. The oil industry is one of the major industries of this state and had been for many years prior to the enactment of chapter 156, Session Laws 1933. The argument of respondent along this line might with propriety be presented to the Legislature, but this court cannot extend by judicial construction a law into a field outside of and beyond the limits fixed by the Legislature. The classification of property for the purpose of taxation is within the peculiar province of the Legislature. Pure Oil Pipe Line Co. v. Cornish, 163 Okla. 79, 20 P. (2d) 1041.

If it had been the intention of the Legislature to levy a tax upon motor carriers who transported their own property over the highways of this state in the furtherance of the development of petroleum or while engaged in any other industrial pursuit, we know of no reason why the legislative intent to do so would not have been declared in plain, clear, and unmistakable language. To so hold herein would lead to gross absurdities in the levy of the tax, which could not have been within the contemplation of the Legislature. In the absence of such language in the act in question and in view of the general principles hereinabove stated relating to taxation, we are of the opinion that the provisions of chapter 156, supra, have no application to a person, firm, or corporation using the state highway for the transportation of its own property engaged in an "industrial" as distinguished from a "commercial" enterprise.

Various other contentions are made by the parties, but having taken this view of the matter, it is unnecessary to consider them.

We are of the opinion that the respondent, Tax Commission, is without jurisdiction to proceed further against petitioner herein, and therefore the writ is granted in accordance with the prayer of the petition.

McNEILL, C. J., and BAYLESS, BUSBY, PHELPS, and GIBSON, JJ., concur. RILEY, WELCH, and CORN, JJ., dissent.

---

RILEY, J. (dissenting). The issue involved in this original action is whether the Oklahoma Tax Commission will be restrained from the collection of a tax. That issue is dependent upon the controversy as to whether the Pure Oil Company is a class "C" motor carrier. That controversy is determined by

the breadth or scope of the legislative enactment, chapter 156, S. L. 1933, p. 354.

Primarily, this court is presented with the question of jurisdiction. Although that question is not briefed, it always arises, for it is elementary that jurisdiction cannot be conferred by consent. More than a quarter of a century ago this court, speaking through Mr. Justice Kane, a former member of the Constitutional Convention, said:

"The Supreme Court is essentially a court of appeals, and is without original jurisdiction to issue writs of injunction in cases where the relief prayed for is purely injunctional." State ex rel. Brett, Co. Atty., v. Kenner et al., 21 Okla. 817, 97 P. 258.

In the original case on the subject a levy of taxes was sought to be enjoined. The same relief is sought in the cause at bar. In the cited case it was said:

"From the foregoing it is obvious that the relief prayed for is purely injunctional."

It is equally as obvious in the instant case. It so being, this court ought not issue a writ of injunction under the cloak or designation of a writ of prohibition.

The writ of injunction was well known to the framers of the organic law, and there was sound reason for exclusion of this writ from those enumerated and made available, in the Constitution, section 2, art. 7, for the needs of the Supreme Court. It is worthy of note that the Supreme Court of the United States is not a court of original jurisdiction except in special cases. Marbury v. Madison, 1 Cranch, 137, 2 L. Ed. 60. It functions well despite the limits. The political issue has ever been to further limit rather than to extend its powers. The reason underlying this judicial structure and distribution of jurisdiction, original and appellate, is an appreciation of the limitations upon man's knowledge of the law. No man or body of men is the repository of all wisdom, either legal or political. A jurist cannot speak as the Oracle. A judge can will nothing. Numbers but lead to mass or mob psychology with a resultant standardization or averaging of intelligence. The superiority of a Supreme Court is therefore maintained only by a superior position of authority which allows time for deliberation, preparation and study (The Work of the Supreme Court—Frankfurter-Landis, Introduction), not only on the part of those who occupy the bench, but also on the part of litigants and attorneys, who present errors. The text, meaning, and intention of our laws are not so plain as those brought down from Mt. Sinai, although there is no ambiguity in the one now under consideration— and ambiguity alone justifies resort to historical setting in order to ascertain the true meaning. It has been observed by a cynic that an appellate court is one that exists to correct errors of others, and to perpetuate its own. Be the criticism just or unwarranted, there is no occasion in the cause at bar to depart from ancient landmarks in the commission of new errors of law.

Aside from the question of jurisdiction, as I view it, the majority has fallen into grave error. The tax imposed by this act is laid upon the "person, firm, business, trust or corporation," and not upon the particular vehicle that happens to use the "King's Highway" in furtherance of a "private commercial enterprise." This is so, notwithstanding that the amount of the tax is calculated upon a motor carrier-weight and mileage basis.

Under the agreed facts, the petitioner's business is so extensive that use is made of the highways intersecting two or more cities. It is "not operating exclusively within the limits of an incorporated city or town within this state." It is therefore doing an "inter-city business" within the meaning of the act.

" 'Interstate commerce' includes transportation upon a railroad passing through more states than one, or from a point in one state to a point in another." Mobile & O. R. Co. v. Sessions (C. C.) 28 Fed. 592 (4 Words & Phrases, First Series, p. 3725').

Doubtless the word "inter-city" was used by the Legislature in relation to its broad, analogous judicial construction so that traffic intersecting two or more cities constitutes inter-city traffic.

Is the petitioner operating "any motor vehicle upon any public highway * * * for commercial purposes, or in **furtherance** of a private commercial enterprise?" If so, it is a "motor carrier" and must pay the tax. That the business need not be impressed with a public character to be subject to the tax is evident from the description of class "C" motor carriers (par. 3), which includes all "engaged in the transportation of property in furtherance of any private commercial enterprise and not operating as a private carrier for hire or as a common carrier for hire," with certain exception as to farm products, etc., not here applicable, except to show by the exclusions, inclusion of such a motor carrier as petitioner's engaged in using the highway in furtherance of a commercial enterprise.

The majority restrict the word "commer-

cia'." so as to limit it to "buying, selling, and exchange in goods, wares, and merchandise in the general sales or traffic of our own markets", but Webster's New Int. Dictionary defines "commercial" as "having financial profit as the primary aim", and "commerce" is defined as "business intercourse," and "traffic" is given by the same authority as a synonym prior to the word "trade."

"Commerce" is defined in Gibbons v. Ogden, 22 U. S. (9 Wheat.) 1, 6 L. Ed. 23, to mean, not only traffic, but also intercourse. Commerce is traffic, but it is something more, it is intercourse. McNaughton Co. v. McGirl, 20 Mont. 124, 49 P. 651, 38 L. R. A. 367, 63 Am. St. Rep. 610. It embraces also transportation and all means and appliances necessarily employed in carrying it on. Chicago & N. W. R. Co. v. Fuller, 84 U. S. (17 Wall.) 560, 21 L. Ed. 710; Wender v. Caldwell, 55 U. S. (14 How.) 434, 14 L. Ed. 487.

Undoubtedly the carrying from one state to another by independent carrier of goods and commodities that are ordinary subjects of traffic constitutes interstate commerce. Champion v. Ames, 188 U. S. 321, 23 Sup. Ct. 321, 47 L. Ed. 492.

"Commerce" includes transportation and transit of persons and property, as well as the purchase, sale, and exchange of commodities. U. S. v. E. C. Knight Co., 60 Fed. 934.

As applied to state statutes, classifying as "commercial," for the purpose of taxation, motor vehicles, as in the case at bar, the Supreme Court of Alabama held the fact that trucks were used for carrying logs and provisions of the owner did not exempt such trucks from a privilege tax levied on commercial vehicles, since by "commerce" is meant, not traffic only, but every species of commercial intercourse as well, and transportation is as much a part of commerce as are the goods transported. Conecuh County v. Simmons, 19 Ala. App. 65, 95 So. 488; Ruck v. Chi., M. & St. P. Ry. Co., 153 Wis. 158, 140 N. W. 1074.

Undoubtedly such meaning was intended by the Legislature, for while the prior act, chapter 253, S. L. 1929, sec. 1 (b), par. 3, may have limited the definition of class "C" motor carriers to those engaged in trade or merchandising, by the use of the words "consignee, purchaser, or recipient of such property, goods or merchandise," as stated by the majority opinion, now, for the first time, subsequent to repeal, yet the prior judicial construction was upon the provision for the charge or collection on account of the trans-

portation or delivery of goods or merchandise, and not upon a restricted meaning of the word "commercial." Collins-Dietz-Morris Co. v. State Corp. Comm., 154 Okla. 121, 7 P. (2d) 123, 80 A. L. R. 561. The court is now presented with a new act, wherein the words "goods," "merchandise," "consignee," "purchaser," etc., are omitted. Some significance must be attributed to the amendment which omitted these words, and it is impossible to properly construe the present act so as to conclude that the Legislature did not intend to embrace within the definition a designation of such users of the state highways for commercial purposes as is the petitioner.

In the final analysis, payment of the tax imposed upon petitioner by law is dependent upon whether the word "commercial" as used in the act is broad enough in its meaning to include either traffic, transportation, intercourse, or transit of property.

That it is so I rest assured upon the eminent authorities cited and quoted. But be that as it may, there can be no doubt but that petitioner is engaged, considering the broader aspect of the purposes of its business, in a commercial enterprise. The goal of its endeavor, be it production of natural resources or industrial pursuits, is profit. Its use of the highway is "in **furtherance**" of this. Consequently, by the act, the Legislature sought justly to tax it for the use and upkeep of the public highway appropriated to its private commercial use.