SAWIN et al. v. NEASE.

*97 P. 2d 27.*

No. 28753.   Dec. 12, 1939.

Embry, Johnson, Crowe & Tolbert, of Oklahoma City, and Victor C. Gorton, of Chicago, for plaintiffs in error.

L. M. Gensman and Charles G. Ozmun, both of Lawton, for defendant in error.

DANNER, J.  The plaintiff sustained personal injuries from collision with a

truck being driven by M. D. Sawin, who he contended was the servant of Sears Roebuck & Company in driving the truck, and both of whom he sued. He recovered a verdict and judgment against both, and they separately appeal. We consider first the contention of Sears Roebuck & Company, hereinafter called Sears.

The accident occurred on a highway between the towns of Temple and Sterling, Okla. Sawin was transporting merchandise between those towns for Sears. The only evidence on the relationship between Sears and Sawin, that is whether Sawin was an independent contractor or a servant, was a written contract entered into between Sears and Sawin, pursuant to which Sawin was doing the hauling. The plaintiff contended that said contract constituted Sawin the servant of Sears, as distinguished from an independent contractor. The trial judge held as a matter of law that plaintiff's contention was correct, instructing the jury that under said written agreement Sawin was a servant, and that if the jury should find against Sawin, it should also find against the defendant Sears. The main contention of Sears is that the contract, and the practice of the parties thereunder, created the relationship of independent contractor and contractee. After careful consideration we have come to the conclusion that this contention is correct, and that the trial court was in error in holding that said contract created the relationship of master and servant.

Sawin was in the general trucking business at Sterling, Okla., doing hauling generally for any parties who might engage his services. He spent approximately half of his time hauling goods for the general public and the other half in hauling for the defendant Sears pursuant to the contract. He furnished and used his own truck and equipment, paid for his own repairs, purchased all of his oil and gas, and hired his own help, if any. Sears paid him ten cents per mile for the hauling which he did for it. On some occasions he hauled freight for others in the same load with the Sears merchandise, or he would haul cotton seed or other merchandise from Sterling to Lawton for another party and would then go to Temple and pick up a load for Sears and haul it back to Sterling.

The contract is of great length, so that considerations of space, time, and clarity are better served by reciting the substance of its material provisions, rather than copying it at length. Its preamble recited that Sawin (therein called carrier) was engaged in the transportation business and that he was qualified to so engage and had complied with all the requirements imposed by law upon such business. The contract expressly stipulated that the services of the carrier were to be performed in connection with and as a part of the carrier's regular business, and that the carrier was and should be at all times an independent contractor, and, further, that the carrier was not and should at no time be considered an employee of Sears. That stipulation, if not adhered to in the performance of the contract, would be ineffective. It likewise might be ineffective if it were inconsistent with the other provisions contained in the contract. Such, however, is not the case.

It was further provided that the carrier would select and determine his own routes in transporting the merchandise. The carrier further agreed to comply with all federal, state, and municipal laws in transporting the goods and to indemnify and hold Sears free and harmless from all penalties enforced by carrier's violation of any such law. Under the terms of the contract, if any of Sears' merchandise should be damaged, lost, or stolen while in the carrier's possession, he was required to reimburse Sears therefor. The carrier further agreed not to use Sears' name on the carrier's motor trucks nor in any of his advertising except upon the express written consent of Sears.

The foregoing portions of the contract all tend to show, and permit of no other construction, so far, than that Sawin, the carrier, was an independent contractor. But the plaintiff says that certain other provisions, which we have not yet men-

tioned, made him a servant. We now consider those provisions.

The contract gave to Sears the right to designate the times and points between which transportation was to be provided, the carrier, however, to select the routes as aforesaid. While it is true that a master has the same rights in relationship to a servant's work, the presence of such a stipulation in an independent contract does not of itself remove its independence. To say that the contractee retains the right to say when services will be performed is not to say that he retains the right of directing how or in what manner the other party shall actually perform those services. Similarly, retention of the right to designate between what points transportation is to be furnished obviously gives the contractee no right of control over the contractor between those points. It is an elemental principle of law, which by this time should need no citation of authorities, that the employer may direct the particular result to be achieved, without thereby making a servant of the other party, so long as he neither retains the right nor attempts to control the manner in which the result is achieved. This portion of the contract is in principle no different from the contract involved in Oklahoma Publishing Co. v. Greenlee, 150 Okla. 69, 300 P. 684, in which it was held that a trucker or deliveryman who agreed to receive newspapers from a publishing company each day, at a place and time designated by the publishing company, and to deliver said papers to subscribers on a route designated by the publisher, was an independent contractor, and that those provisions did not give the publisher such right of control over the contractor as to make him a servant. In Ellis & Lewis v. Trimble, 177 Okla. 5, 57 P. 2d 244, defendant was engaged in constructing a right of way, and engaged one Phillips to haul material. Phillips owned the truck, paid for its upkeep and operation and defendant paid him so much per load, much the same arrangement as here. However, the defendant told Phillips when to commence work, where to get the material and where to dispose of it, just as in this case. The court held that the defendant was nevertheless an independent contractor.

The facts involved in Porter Construction Co. v. Burton, 156 Okla. 72, 8 P. 2d 64, appear in the following excerpt from the opinion:

"Porter Construction Company was engaged in laying pavement in the city of Tulsa. In prosecuting the work, it was necessary to haul cement, sand and gravel from the yards of the Porter Construction Company over the streets of Tulsa to a concrete mixer, a distance of about two miles. Claimant owned his own truck, and, with others, was hauling cement, sand and gravel for the construction company. At the loading and unloading places, employees directed claimant where to place his truck. The loading and unloading of the trucks was done by employees of the construction company. Claimant was paid 40 cents per load; the pay being based upon the distance of the haul, 25 cents for the first mile and 15 cents for each additional mile for each load. The foreman of the construction company directed claimant where to go for the material and whether to load with cement, sand, or gravel. Claimant was required to work when the mixer was being operated; that is, he was required to go to work at about 7 o'clock a. m., was directed when to quit for the noon hour and how long, and when to quit at the end of a day's work. A certain route was designated over which to haul, but this was only for the purpose of determining the distance of the haul. Claimant was at liberty to choose another or longer route, but his pay would be allowed only for the distance of the designated route. Claimant used his own truck, kept it in repair, and was at liberty to operate the truck himself or to employ another to do so."

Notwithstanding the fact that the hours of working were designated by the alleged employer, and that the route to be followed as well as the destination of the truck was controlled by the alleged employer, it was held that the relationship was not that of master and servant, but that the alleged employee was an independent contractor.

As stated by us in Fairmont Creamery

Co. v. Carsten et al., 175 Okla. 592, 55 P. 2d 757, commenting on certain annotations in 16 L. R. A. (N. S.) 816 and 65 L. R. A. 468:

" 'As is there shown, the cases generally hold that draymen, truckmen, cartmen, etc., are regarded as independent contractors, unless there is specified evidence that control was exercised over them by the owner of the goods which were being hauled. The later cases are to the same effect, and the decisions generally turn upon the question whether the owner of the goods exercised, or did not exercise, control over the goods during the process of hauling.' "

It is not so much control over the goods as it is control over the manner or method of hauling which is the important question. In the instant case Sears had no right whatsoever to interfere in the least particular in the manner with which Sawin would load goods onto his truck, for illustration, or in what arrangement they should there be placed, or by what route Sawin should proceed, or in what manner he should drive the truck. Sears had no right to interfere with any of the details of execution of the work. Nor could Sears control the choice of who should drive the truck for Sawin, or discharge said driver for any reason.

Another provision in the contract gave Sears the right to look to the carrier, or to any connecting transportation company selected by the carrier, for safe and prompt delivery of merchandise. This is approximately the same right reserved to any shipper of goods, whether the goods be shipped over a railroad or by bus or by a public drayman.

Another provision gave to Sears the right to demand from Sawin receipts for delivery of goods, either from consignee, connecting carriers, or from Sears' employees themselves in instances where merchandise was delivered to Sears from others. This same provision required Sawin to furnish Sears a notation and report of any shortage in merchandise delivered by him or received by him for Sears. This is a common provision in contracts with carriers. It throws no light at all, one way or the other, upon the control, if any, exercised by Sears in the *means and manner* of transporting the goods.

The cases discussing the law of independent contractors are almost without number, and usually an argument is easily obtained on the question whether in a given situation the person in question is a servant or an independent contractor; but when the numerous judicial pronouncements are reduced to their decisive substance it is found that the hub of the entire controversy is whether the employer had the right to control, or purported or attempted to control, the *manner* of the doing of the thing, by the alleged servant, which resulted in the injury. If he did have that right, or exercised it regardless of his right to exercise it, then the relationship is that of master and servant, regardless of what any existing written contract may set forth on its face; if he did not have that right, and did not exercise such right, but had only the right to demand specified results, the relationship is that of independent contractor and contractee.

As we have seen, Sears had no right to control the manner in which Sawin or Sawin's employees should drive the truck. Or if the brakes, for illustration, were faulty, and Sears knew of that fact, it could neither make Sawin repair the brakes nor could it repair the brakes itself and charge the same to Sawin. So long as Sawin delivered the goods on schedule and at the designated points, and delivered same in good condition, the contract as between him and Sears was performed, and Sawin owed Sears no other duty, whatever his duty was to the public at large.

Another provision of the contract required the carrier to provide, at his own expense, cargo insurance, employers' liability insurance, and public liability insurance. The plaintiff contends this shows that in the minds of the parties Sawin was a servant, else Sears would have no motive for the requiring of such insurance. The plaintiff cites no case to support this contention, and we find that the prevailing rule is to the contrary.

Hutchins v. John Hancock Mutual Life Ins. Co., 89 N. H. 79, 192 Atl. 498; Employers' Mutual Liability Ins. Co. v. Brower, 224 Wis. 485, 272 N. W. 359; Ross v. St. Louis Dairy Co., 339 Mo. 982, 98 S. W. 2d 717; Grace v. Louisville & N. R. Co., 19 Tenn. App. 382, 89 S. W. 2d 354. The courts generally construe such a requirement as being merely the exercise of an abundant precaution. As stated in Ross v. St. Louis Dairy Co., supra:

"It is argued also that the fact that the contract required Bernhardt, Niehaus & Company to carry liability insurance to protect besides themselves the 'contingent liability' of the Dairy Company indicates that Bernhardt, Niehaus & Company was the Dairy Company's agent, else there could not have been liability on the part of the latter for any act or negligence of the former. No authorities are cited on this proposition. The Dairy Company may have thought that, although not liable, claims might be made against it, and have taken the precaution to require insurance to be carried for protection against such claims. We are not persuaded that such provision alters the relationship otherwise clearly created by the contract."

In Barnsdall Refining Co. v. Industrial Commission, 163 Okla. 154, 21 P. 2d 749, and in Ellis & Lewis v. Trimble, 177 Okla. 5, 57 P. 2d 244, we set forth several elements which are usually considered in determining whether one is a servant or an independent contractor:

"(1) The degree of control exercised by the employer, or the independence enjoyed by the contractor or agent; (2) whether the party is to be paid by the job or is to receive a certain salary by the day, week, or month; (3) whether his employment consists solely in working for his employer; (4) the control that is exercised over him in the method and manner of performing the work; (5) whether the agent uses his own equipment, or whether the equipment, if any, so used, is owned and controlled by the owner; (6) the nature of the contract, whether written or oral."

Application of the foregoing tests or questions, one by one, to the facts of the instant case, clearly reveals that Sawin was an independent contractor, in accordance with the express stipulation of the parties to that effect, as contained in the contract.

The plaintiff says that the contract is a "subterfuge" and that it was made for the purpose of avoiding liability. As to the contention of subterfuge, we have not discovered any supporting evidence. In the performance of the contract there was nothing detracting from its independence. And on the question whether the desire of Sears to prevent liability was the reason for entering into the contract, such is not against the law. In fact, the prevention of future liability may justifiably be one of the good reasons for making an independent contract, and if the contract is in fact independent, and if in the performance thereof said independence is retained, the motive of the contractee in desiring to rid himself of the hazard of being involved in accidents is one which he may lawfully satisfy.

The defendant Sawin presents two propositions. The first is that the court erred in refusing to sustain his motion for a mistrial upon the jury's being advised of the existence of public liability insurance. He had already told the jury, by testimony which was uncontradicted, that he had not complied with the provision in the contract requiring him to carry insurance, and that he did not have insurance. It is not contended that the jury was led to infer that he personally carried insurance. It is contended by him that the jury was led to believe that defendant Sears carried insurance, and that this prejudiced him because the judge instructed the jury that if they found against either defendant, they would have to find against both.

The testimony arose in the following manner. Defendants showed by one of their witnesses that plaintiff was up and about on the day following the injury and was at a certain store. Then plaintiff's attorney, on cross-examination, asked the witness, "Who have you talked to about seeing this fellow there?", to which witness replied that he had told Sawin. Then the following occurred:

"Q. Who else have you talked to about this? A. I don't recall who. Q. Did you ever have any conversation with Mr. Crowe about it? A. Today. Q. Did you ever talk to anybody else about it, purporting to represent Sears-Roebuck & Company? A. I did. Q. Who was it? A. I don't know his name, Sears-Roebuck, I wouldn't say he represented Sears-Roebuck. He was possibly, might have been an adjuster, or insurance adjuster, or something. Q. If the court please, I didn't ask that question."

The jury was then excused from the room, defendants moved for a mistrial, plaintiff's counsel was sworn and testified that he did not intentionally inject the matter of insurance into the proceedings, the judge overruled the motion, recalled the jury and instructed them to disregard the answer to the question.

We are unable to agree that this could have caused prejudice. The witness stated that the man with whom he talked "was possibly" or "might have been" an insurance adjuster "or something." Or he might have been a cobbler, or lawyer. It so affirmatively appeared from the witness's own lips that he himself was only guessing or surmising that the man might have been an adjuster, and that he did not know, that we feel we would be stretching things if we should say that the jury thereby became informed an insurance company was behind the defendant. Witness's statement of the mere possibility that he may have been an insurance adjuster is not a sufficient basis for reversing the judgment and causing a new trial.

The substance of the argument in defendant Sawin's second proposition is that, since the jury could not apportion the verdict between him and defendant Sears, but had to render a common amount in the verdict, if any at all, the judgment against him should be reversed if it is reversed as to the other defendant, because of the probability that the jury may have returned a smaller verdict against him alone, and would probably have done so, if the trial judge had ruled correctly concerning the non-liability of his wealthier codefendant. However plausible this argument may

appear, it is not applicable to this kind of case. Compensatory damages are awarded on the basis, at least in theory, of the detriment or injury suffered by plaintiff, and that alone, while in punitive damages the ability of the defendant to pay, or his wealth or poverty, may properly be one of the elements considered. Punitive damages are not involved in this case. The decisions and authorities cited by defendant Sawin, allowing a new trial as to all defendants where there is a reversal as to one of them, are cases involving punitive damages. In that class of cases there is legal justification for supposing that the jury considered the wealth of defendant in setting the amount of the verdict as one of the elements thereof, while in a case involving compensatory damages the theory thereof precludes such assumption. Therefore we may not, consistently with the rules of damages, reverse the judgment as against this defendant on the theory advanced. It is not contended that the verdict is excessive in the light of plaintiff's injuries.

The judgment is affirmed as to defendant Sawin, and as against defendant Sears Roebuck & Company it is reversed and remanded, with directions to enter judgment for that defendant.

BAYLESS, C. J., and RILEY, OSBORN, CORN, and HURST, JJ., concur. GIBSON, J., concurs in part, dissents in part. WELCH, V. C. J., and DAVISON, J., absent.