**PERMA-STONE OKLAHOMA CITY CO.,**
a corporation, Plaintiff,

v.

**OKLAHOMA EMPLOYMENT SECURITY COMMISSION, Defendant.**

No. 35879.

Supreme Court of Oklahoma.

Nov. 16, 1954.

Rehearing Denied Jan. 7, 1955.

Leslie L. Conner, Charles W. Conner, Arnold B. Britton and A. L. Hilpirt, Oklahoma City, for plaintiff in error.

Burton Duncan and Milton R. Elliott, Oklahoma City, for defendant in error.

DAVISON, Justice.

This is an appeal from a judgment of the District Court of Oklahoma County in an action brought by Perma-Stone Oklahoma City Co., as plaintiff, against Oklahoma Employment Security Commission, as defendant, to review an order of the Assessment Board of said Commission denying an application of plaintiff for refund of contributions theretofore paid. The parties will be referred to as they appeared in the district court.

Plaintiff is a corporation, engaged in the manufacture and application of a stone veneer finish for houses and other structures. Purchase contracts for the product, known as perma-stone, and its application are secured by "salesmen" or "agents" from home owners and owners of other types of buildings. The contracts do not become effective nor binding until accepted by plaintiff. As compensation for securing the contracts, the salesmen were paid commissions on those accepted, varying in amount, from 5 to 15 per cent of the purchase price. For the years 1948, 1949, and 1950, the defendant collected from plaintiff the sum of $1,-739.50 as contributions to the Unemployment Compensation Fund, assessed by reason of the sums paid as commissions to said salesmen. Plaintiff filed its application for refund of said contributions with what is designated as the Assessment Board of the Oklahoma Employment Security Commission. From a denial of said application, an appeal was taken to the district court. The judgment there was for defendant and this appeal was perfected therefrom.

The entire litigation is concerned with interpretation of said Employment Security Act, 40 O.S.1951 § 211 et seq., and particularly with sections 224(g) and 229(f) (5), in so far as they provide as follows:

224(g). "In any judicial proceeding under this Section the findings of the Commission, or its duly authorized representative, as to the facts, if supported by evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the Court shall be confined to questions of law."

229(f) (5). "Services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the Commission that:

"(a) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of hire and in fact; and

"(b) Such individual is customarily engaged in an independently established trade, occupation, profession, or business; or

"(c) Such service is outside the usual course of the business for which such service is performed and that such service is performed outside of all the places of business of the enterprise for which such service is performed."

The first above quoted statute is almost identical to that part of 85 O.S.1951 § 26 which provides, with reference to a finding of the State Industrial Commission that,

"The decision of the Commission shall be final as to all questions of fact, * * *."

The jurisdiction of both bodies (Industrial Commission and Employment Security Commission) is dependent upon the existence of the relationship of employer and employee and therefore a determination of the question is one of law. The decisions of both bodies are conclusive on questions of fact but not on questions of law. As to a finding of the Industrial Commission upon the relationship of the parties, it was said, in the case of Williams v. Branum, 192 Okl. 129, 134 P.2d 352, 354, that,

"The findings of fact by the State Industrial Commission on the issues relating to the existence of its jurisdiction are not binding or conclusive on appeal, but it is the duty of this court to weigh such evidence and arrive at

its own view of the issue in order that judicial process may be accorded the complaining party, it being recognized that the State Industrial Commission is not a court but an administrative body exercising some functions judicial in their nature." See also, Jackson v. State Industrial Commission, 207 Okl. 28, 246 P.2d 742.

The same rule is applicable to the findings of fact by the Employment Security Commission. In that the finding here is as to jurisdiction and constitutes a question of law, the case differs from that of Oklahoma Employment Security Commission v. Sanders, Okl., 272 P.2d 379 dealing with a question of fact.

The next question for determination is founded upon a stipulation of the parties, as follows:

"If the individuals involved in the Application were employees the Applicant is not entitled to any refund. If the individuals involved in the Application were not employees the Applicant is entitled to a refund for the amount claimed."

■ In construing another part of the Employment Security Act, it was pointed out, in the case of State ex rel. Oklahoma Employment Security Commission v. Tulsa Flower Exchange, 192 Okl. 293, 135 P.2d 46, 48, that,

"The statute here under consideration authorizes the collection of a tax from employers of a certain class. Since it is a tax statute it should be construed with the taxpayer's interest uppermost in mind, and the courts will not enlarge upon its provisions to make them applicable in any case not clearly within the contemplation of the Legislature. Pure Oil Co. v. Cornish, 174 Okl. 615, 52 P.2d 832."

The parties here argue at length the meaning of paragraphs (a), (b) and (c) of said subsection (f) (5) but, as was said in the case of Fuller Brush Co. v. Industrial Commission, 99 Utah 97, 104 P.2d 201, 202, 129 A.L.R. 511,

"The first question therefore to be determined, * * * when the ques-

tion arises as to whether a particular individual should be included on a payroll report for purposes of determining the amount of contributions to be paid is: Has this individual rendered personal service for wages or under a contract of hire? In other words, did he render personal services? If so, did he, or was he entitled to receive therefor remuneration based upon such personal service? If both these questions be answered in the affirmative, then he is within the act, unless excluded by subheads".

If it be determined that the relationship of employer and employee exists, it then becomes necessary to determine whether or not the employment falls within exception paragraphs (a) and (b) or paragraphs (a) and (c). In the Virginia act, Code 1942, § 1887(94) (j) (6), exception paragraph (A) is the same as our paragraph (a) and exception paragraph (B) is the same as our paragraphs (b) and (c) combined. When considering those paragraphs, after determining the existence of the employer-employee relationship, the Virginia Court, in the case of Unemployment Compensation Commission of Virginia v. Collins, 182 Va. 426, 29 S.E.2d 388, 392, said,

"It will be observed that the two exceptions (A) and (B) are in the conjunctive, and, therefore, in order to be exempt from the Act, the alleged employer must have shown himself to be within the exception of paragraph (A), and within one of the alternative exceptions enumerated in paragraph (B).

The Fuller Brush Co. case and the Collins case, supra, involved factual situations far different from the one in the case at bar but they are quoted because they so accurately state the rules of applying those paragraphs of the Employment Security Act with which we are here concerned. Their situations are more nearly parallel to the case of Brenner v. State ex rel. Oklahoma Employment Security Commission, 201 Okl. 70, 201 P.2d 236, 243, wherein we were interpreting the former act, now amended, which provided that to be exempt from the operation of the act the employ-

ment must come within "the three classes designated as (a), (b) *and* (c)" rather than as now required by Sec. 229(f) (5) to come within (a) and (b) *or* (c).

Contained in the arguments of the parties and the opinion of the court in the case of Texas Co. v. Wheeless, 185 Miss. 799, 187 So. 880, is a thorough discussion of the proposition. In many respects, the facts there were similar to those in the case before us. A distributor or consignee of petroleum products, commonly known as a bulk station operator was held to be an independent contractor and not an employee because he was not "under alleged employer's control and direction in performance of details of (his) work and in use of means employed." It was there pointed out that,

"In the statute now before us, the Legislature saw fit to say under the sub-head of Definitions of terms, that the employment contemplated was 'service * * * performed for wages or under any contract of hire' instead of contract of employment. From the whole context we think it clear that the service which was to be performed for wages in the ordinary sense was to be under a contract of hire, and that if the compensation was to be paid in salaries or commissions it was likewise to be payable for services rendered under a contract of hire. But for the purpose of this decision we need not give to the term 'contract of hire' a technical legal meaning, as distinguished from a contract of employment, but shall assume, as we should, that the Legislature used the words 'Employer' and 'Employee' in their usual and ordinary sense, and that this was done with a view of giving effect to the declared public policy contained in the Act, for the relief of unemployment, as hereinbefore set forth; and, from this premise, determine whether the consignees and their helpers were employees of the appellant in the ordinary sense in which the term is commonly used in the decided cases."

A fact situation almost identical to that in the Texas Co. case, supra, was recently before this court in an action for damages for wrongful death styled, Keith v. Mid-Continent Petroleum Corp., Okl., 272 P.2d 371, 376. The applicable rule of law in distinguishing between an independent contractor and an employer was stated therein as follows:

"In Sawin v. Nease, 186 Okl. 195, 97 P.2d 27, 30, we said:

" 'The cases discussing the law of independent contractors are almost without number, and usually an argument is easily obtained on the question whether in a given situation, the person in question is a servant or an independent contractor; but when the numerous judicial pronouncements are reduced to their decisive substance it is found that the hub of the entire controversy is whether the employer had the right to control, or purported or attempted to control, the manner of the doing of the thing, by the alleged servant, which resulted in the injury. If he did have that right, or exercised it regardless of his right to exercise it, then the relationship is that of master and servant, regardless of what any existing written contract may set forth on its face; if he did not have the right, and did not exercise such right, but had only the right to demand specified results, the relationship is that of independent contractor and contractee.' "

In the case of Realty Mtg. & Sales Co. v. Oklahoma Employment Security Commission, 197 Okl. 308, 169 P.2d 761, 762, those elements were pointed out which must exist to establish the relationship as one of employment. The syllabus in that case is as follows:

"By separate mutual agreements certain real estate salesmen associated themselves with plaintiff, a real estate broker, under which agreements plaintiff and each salesman jointly engaged in the sale of real estate and the making of real estate loans and divided the commissions paid therefor. Plaintiff contributed its office space, equipment and personnel, and such listings of real estate as were received by it, and in-

formation received as to prospective purchasers and lenders, and closed or completed deals made by salesmen and collected and divided the commissions earned on deals made. The salesmen contributed their time and efforts to effect sales, but worked without any control or supervision by plaintiff. They were not obligated to sell property listed with plaintiff, or to devote any certain amount of time to the business. They were free to engage in other business; furnished their own cars and paid their own expenses, and worked when and where they pleased. Either the plaintiff or any salesman could terminate the arrangement between them at any time, and if it was terminated by either party, the salesmen was entitled to receive his share of any commission earned prior to the termination and paid thereafter. Plaintiff paid the salesmen nothing, their share of commissions earned being their sole remuneration. *Held,* that the salesmen were not 'in the employment' of plaintiff, as that term is defined by the Oklahoma Unemployment Act of 1936, S.L.1936, Ex.Sess., c. 52, p. 30."

In the instant case there was no conflict as to the facts. The salesmen were not required to devote all their time or any definite part of their time to securing contracts for application of the siding. They might be carpenters or contractors, salesmen of aluminum, books, magazines, siding, roofing or other products. They would get a number of blank contracts from plaintiff and, when an opportunity presented itself, they would have a home owner or owner of a building sign one of the contracts for the application of perma-stone siding to the structure at a fixed price. The signed contract would then be submitted to plaintiff for acceptance. If the contract proved acceptable, then plaintiff and the salesman would agree on the amount of the commission, to be paid, one half upon approval of financing the job and one half upon its completion. After acceptance of the contract, plaintiff handled everything to completion. The salesman's services were at an end.

In securing the contracts to be submitted to plaintiff, the salesmen worked how and when they pleased and in whatever manner they chose. They furnished their own transportation. Usually, their contacts with customers were made initially for the sale of other products. Neither the salesmen nor plaintiff were, in anywise, obligated to the other to continue the relationship. Either could terminate it at will without cause or notice.

These facts do not establish the status of plaintiff as that of employer under the provisions of the Employment Security Act.

The judgment is reversed and the cause remanded with directions to order a refund of the erroneous contributions paid by plaintiff.

JOHNSON, V. C. J., and WELCH, CORN, ARNOLD and O'NEAL, JJ., concur.

HALLEY, C. J., and WILLIAMS and BLACKBIRD, JJ., dissent.

WILLIAMS, Justice (dissenting).

I do not agree with the majority opinion. It is stated therein that the jurisdiction of the Employment Security Commission is dependent upon the existence of the relationship of employer and employee and therefore a determination of the question is one of law. I fear there has been a misapprehension of the facts in the case and of the question before the court. It was stipulated by the parties that plaintiff is an employer within the provisions of the Employment Security Act and therefore subject to the provisions of such act. The only controversy between the parties here is as to the amount of contributions plaintiff is required to make for the years in controversy. The amount of such contribution is based upon the amount of wages paid during the period in question. The case, therefore, simply presents a question of fact as to the amount of wages paid by plaintiff during the period in question. The Commission's finding as to the facts, if supported by evidence and in the absence of fraud, is conclusive. 40 O.S.1951 § 224(g). The only question before this court, there-

fore, is whether the Commission's findings are supported by any evidence (there being no contention of fraud). If they are supported by any evidence, they must be affirmed. It is not only not the duty of this court to weigh the evidence and arrive at its own view of the issue, but such action is specifically prohibited by the statute, supra.

It is my view that the Commission's findings are supported by some evidence, and must therefore be affirmed.

It is plaintiff's contention that the remuneration paid by it to certain salesmen should not be included in computing the amount of wages paid by it because such salesmen were not employees.

The status of such salesmen, for the purpose of the Employment Security Act, is necessarily determined by the provisions of the act itself. The pertinent portions of such act are as follows:

" 'Wages' means all remuneration for services from whatsoever source, including commissions and bonuses and the cash value of all remuneration in any medium other than cash." 40 O.S.1951 § 229(*l*).

"Services performed by an individual for wages or under any contract of hire shall be deemed to be employment subject to this Act unless and until it is shown to the satisfaction of the Commission that: (a) Such individual has been and will continue to be free from control or direction over the performance of such services, both under his contract of hire and in fact; and (b) Such individual is customarily engaged in an independently established trade, occupation, profession, or business; or (c) Such service is outside the usual course of the business for which such service is performed and that such service is performed outside of all the places of business of the enterprise for which such service is performed." 40 O.S.1951 § 229(f) (5).

There is no question but that the salesmen in controversy rendered services for plaintiff and received remuneration therefor in the form of commissions. Under the provisions of 40 O.S.1951 § 229(*l*), above quoted, therefore, these salesmen received wages for their services. Since these salesmen performed services for plaintiff for wages, they must, under the provisions of 40 O.S.1951 § 229(f) (5), be deemed to be employees unless and until it is shown that they have been and will continue to be free from control or direction over the performance of their services and that they are either customarily engaged in an independently established trade, occupation, profession or business, or that their services are rendered outside the usual course of the business for which such services are performed and are performed outside of all of the places of business of the enterprise for which such service is performed. Plaintiff admits this to be the case, but contends that the evidence establishes that the salesmen in question were free from control of plaintiff and were customarily engaged in an independently established trade, occupation, profession or business and that they therefore should not be deemed employees.

The Commission, however, found that plaintiff had failed to show that these salesmen were free from control or that they were customarily engaged in an independently established business, and I am of the opinion that the Commission's findings are sustained by the evidence.

The evidence reveals that plaintiff determined the amount of remuneration to be received by the salesmen, it provided the salesmen with circulars, pamphlets and other selling aids, it assisted the salesmen with instructions on financing, prices, subcontracting, etc., it instructed the salesmen that they must not make misstatements, it provided them with a printed form of order contract which they were required to use and as to the use of which they were instructed; that while such salesmen were not assigned or limited to individual territories of operation, they were limited to the area of the State of Oklahoma in which plaintiff operated; that plaintiff could and would refuse to accept orders from sales-

men who did not operate in a manner satisfactory to plaintiff and that plaintiff could terminate the salesman's relationship with plaintiff at any time, for any reason, without any liability on plaintiff's part. I do not believe such evidence establishes a lack of control on the part of plaintiff over these salesmen.

With reference to plaintiff's contention that all these salesmen were customarily engaged in an independently established trade, occupation, profession or business, the evidence is even more weak and unsatisfactory. Plaintiff listed the names of forty-four persons on its application for refund as being the salesmen whose status is in controversy here. The only testimony offered by plaintiff was that of its secretary. While testifying, plaintiff's secretary was handed the list of forty-four salesmen and asked to identify those persons on the list who had independent businesses. His testimony in that regard was that Fritz Hughes had a tire shop and sold tires, Bill Wright had the Wright Roofing Company and also sold perma-stone and Pat Murphy worked for both Rascoe Window Company and plaintiff. There is no other testimony in the record in this regard. Does such testimony establish that the forty-four salesmen in question were customarily engaged in an independently established trade, occupation, profession or business? I think it does not and that the Commission correctly found that it did not.

Since the burden is on plaintiff to establish to the satisfaction of the Commission that the forty-four salesmen in question were free from control or direction over the performance of their services and were customarily engaged in an independently established trade, occupation, profession, or business, and since plaintiff's evidence failed to establish either of these things, I am of the opinion that the Commission correctly denied plaintiff's application for refund. I therefore respectfully dissent.

I am authorized to state that Mr. Chief Justice HALLEY and Mr. Justice BLACKBIRD concur with the views herein expressed.