437 F.2d 1119
 Claudiatte PIERCE, as surviving widow of Teddy Joe Pierce, Deceased, for herself and Letitia Pierce, minor child of Teddy Joe Pierce, Deceased, Plaintiffs-Appellants,
v.
COOK & CO., Inc., Defendant-Appellee.
Stephen ELLENWOOD, a Minor under the age of 21 years, who sues by Judson Ellenwood, as Next Friend, Plaintiff-Appellant,
v.
COOK & CO., Inc., Defendant-Appellee.
 No. 97-70.
 United States Court of Appeals, Tenth Circuit.
 December 21, 1970.
 
 Raymond A. Trapp, Ponca City, Okl., (Kent C. Phipps, Ponca City, Okl., on the brief), for plaintiffs-appellants.
 Page Dobson, Oklahoma City, Okl., (Rhodes, Hieronymus, Holloway & Wilson, Tulsa, Okl., on the brief), for defendant-appellee.
 Before PHILLIPS, BREITENSTEIN and HILL, Circuit Judges.
 ORIE L. PHILLIPS, Circuit Judge.
 
 
 1
 Claudiatte Pierce, as surviving widow of Teddy Joe Pierce,[1] deceased, for herself and Letitia Pierce, minor child of the decedent, brought an action to recover damages for the wrongful death of decedent against John L. Edwards and Cook and Company, Inc.[2]
 
 
 2
 Stephen Ellenwood, a minor, by Judson Ellenwood, as next friend, brought an action against Cook and Edwards to recover damages for personal injuries.[3]
 
 
 3
 The actions were instituted in the District Court of Kay County, Oklahoma. They arose out of a collision between an automobile and a truck. The actions were duly removed to the United States District Court for the Western District of Oklahoma.
 
 
 4
 Thereafter, Cook filed its separate answer in each case.
 
 
 5
 At a pretrial conference held on October 29, 1968, the court of its own motion consolidated the cases for all purposes except trial. The parties then agreed that the court should determine the facts and the law with respect to the ultimate liability of Cook, only.
 
 
 6
 The claims of plaintiffs against Edwards are not involved in this appeal. It involves only their claims against Cook.
 
 
 7
 The facts with respect to the collision are these:
 
 
 8
 Claudiatte is the widow of the decedent. Letitia is the minor child of the decedent.
 
 
 9
 On January 11, 1968, at about 8 p. m., decedent was driving his automobile in a westerly direction on U.S. Highway 270,[4] a short distance west of Calumet, Oklahoma. Shortly before the collision, Edwards was driving his truck trailer loaded with wheat in an easterly direction on such highway, and to his left of the center line of the highway, viz., in the north lane of the highway, at a speed of about 50 miles per hour.
 
 
 10
 As the decedent was coming out of an "S" curve and was traveling in his right, or the north lane of the highway, the truck, with Edwards driving it, approached the decedent's automobile from the west, with its (the truck's) left wheels to the left of the center line of the highway, viz., in the north lane of the highway, at a speed of about 50 miles per hour. As the two vehicles were about to meet, Edwards steered his truck sharply to the right, causing the trailer to jackknife into and against the automobile of decedent, resulting in injuries to decedent from which he immediately died. Ellenwood suffered personal injuries as a result of the collision.
 
 
 11
 The treads of the tires on the tractor and trailer were so badly worn that the surface thereof was smooth, and the bolts holding the outside dual wheel at the left rear of the trailer were loose.
 
 
 12
 The highway was wet from a recent rain.
 
 
 13
 Additional facts will appear from the findings hereinafter set out.
 
 
 14
 On November 18, 1968, Cook filed a motion for summary judgment in each case.
 
 
 15
 At the hearing on such motion for summary judgment, depositions, interrogatories and answers thereto, requests for admissions of fact and answers thereto, requests for the production of documents and documents produced, and affidavits were introduced in evidence in support of and in opposition to the motions for summary judgment.
 
 On consideration thereof, the court found:
 
 16
 "(a) That at the time of the accident, defendant, * * * Edwards, was driving a truck and trailer owned by him in an easterly direction on U.S. Highway 270 in Canadian County, Oklahoma, and was involved in an accident with an automobile being driven in a westerly direction by Teddy Joe Pierce, deceased husband of plaintiff, Claudiatte Pierce; and that Stephen Ellenwood was a passenger in the Pierce vehicle;
 
 
 17
 "(b) That Edwards was hauling grain in his trailer which has been loaded in Geary, Oklahoma, by personnel of Zobisch Grain Co.; and that no employees or personnel of Cook * * * were present at the loading; and thereby Cook * * * is not charged with any overloading condition, if any;
 
 
 18
 "(c) That the grain had been sold f. o.b. by Zobisch Grain Co. to Cook * * *;
 
 
 19
 "(d) That Cook * * * did not own or lease any trucks or trailers for the purpose of hauling grain but that they were in the sole business of buying and selling grain, including futures;
 
 
 20
 "(e) That Cook * * * had no truck drivers in its employ; that it had no permits, franchises or licenses to haul grain;
 
 
 21
 "(f) And that Edwards was thereby not a sublicensee, sub-permittee or sub-franchisee of Cook * * *;
 
 
 22
 "(g) That Edwards was hauling said grain pursuant to a hauling contract with Cook * * * the provisions of which provided for a predetermined rate of payment per bushel and stated destination of Houston Public Elevator;
 
 
 23
 "(h) That Edwards had hauled grain under contract for Cook * * * on approximately 52 prior occasions without incident over a period of approximately 14 months; and that during said time Edwards hauled for other shippers and Cook * * * contracted with other haulers;
 
 
 24
 "(i) That Cook * * * did not supervise or control and had no right of control as to the method or manner of operation of the hauler, did not specify a specific time for delivery of the grain, did not designate the route of travel to be taken; did not defray any maintenance or operation expenses of the hauler's trucks and made no withholding of income taxes;
 
 
 25
 "(j) That * * * Edwards was an independent contractor to Cook * * * at all pertinent times;
 
 
 26
 "(k) That Edwards had consumed a couple of beers over a period of a couple of hours prior to the accident, but was not intoxicated at the time of the accident; but in any event Cook * * * had no knowledge of the consumption and no knowledge of any drinking propensity in the driver, if any;
 
 
 27
 "(l) That Cook * * * had no knowledge of any defective condition of Edwards' rig or tires and did not inspect the same. Cook * * * made no inquiry whatsoever concerning the condition of Edwards' rig or tires;
 
 
 28
 "(m) That Cook * * * had no knowledge of any disqualifications of Edwards or his driving record, liability insurance, required permits, licenses or franchises and had no knowledge of any incompetence, if any. Cook * * * made no inquiry whatsoever concerning the driving record of Edwards, his liability insurance, his lack of permits, licenses or franchises;
 
 
 29
 "(n) That neither Cook * * * nor any of its servants, agents or employees were directly involved in the accident, the subject of this action; "(o) That Cook * * * is not a `private carrier' as defined by the federal Motor Vehicle Act;
 
 
 30
 "(p) That there are no allegations or proof that Cook * * * conspired to violate or in any manner aided or abetted any violation of the criminal provisions of the federal Motor Carrier Act at 49 U.S.C.A. Section 322(c).
 
 
 31
 "(q) That further * * * Edwards is exempted from the licensing requirements of the federal Motor Carrier Act under the provisions of 49 U.S.C.A. Section 303 (b) (6); and
 
 
 32
 "(r) That under the applicable Oklahoma law, there can be no recovery herein against the movant, Cook * * *."
 
 The court concluded:
 
 33
 "I.
 
 
 34
 "That this Court has jurisdiction of the parties and subject matter under the provisions of 28 U.S.C.A. Section 1332; that said cases were timely and properly removed to the federal court pursuant to the provisions of 28 U.S.C.A. Section 1441 et seq.; and that the Western District of Oklahoma is the proper venue for the action;
 
 
 35
 "II.
 
 
 36
 "That in this diversity action the law of Oklahoma, the place of the occurrence of the accident and death to Teddy Joe Pierce, pertains to suits in tort for injury or wrongful death. See Albina Engine & Machine Works, Inc. v. Abel (10th Cir. 1962), 305 F.2d 77, Slater v. Mexican National Railroad Company, 194 U.S. 120, 48 L.Ed. 900, 24 S.Ct. 581, and Cherokee Laboratories, Inc. v. Rogers, Okl., 398 P.2d 520 (1965);
 
 
 37
 "III.
 
 
 38
 "That this Federal Court sitting in the State of Oklahoma is obliged and bound to ascertain and apply the applicable state law. * * *;
 
 
 39
 "IV.
 
 
 40
 "That * * * as a matter of law under the facts the relationship (between Edwards and Cook) was that of independent contractor and not one of servant, agent or employee. See Sawin v. Nease, 186 Okl. 195, 97 P.2d 27 (Okla. 1939), Fairmont Creamery Co. of Lawton v. Carsten, 175 Okl. 592, 55 P. 2d 757 (Okla. 1936), Coe v. Esau, Okl., 377 P.2d 815 (1963). See also Albina Engine and Machine Works, Inc. v. Able, [Abel] (10th Cir. 1962) 305 F.2d 77;
 
 
 41
 "V.
 
 
 42
 "In Oklahoma a shipper has no duty to third persons for the negligent act of independent contractors unless the acts to be performed are unlawful or inherently dangerous. See Marion Machine Foundry and Supply Company v. Duncan, 187 Okl. 160, 101 P.2d 813 (1940), Barsh v. Mullins, Administrator, Okl., 338 P.2d 845 (1959) and Coe v. Esau, Okl., 377 P.2d 815 (1963);
 
 
 43
 "VI.
 
 
 44
 "Ordinary hauling by truck is neither inherently dangerous nor unlawful. The shipper is under no duty to inquire into the nature and adequacy of an independent hauler's equipment. An automobile is not an inherently dangerous machine. Marion Machine Foundry and Supply Company v. Duncan, supra, and Ford Motor Co. v. Livesay, 610 [61] Okl. 231, 160 Pac. 901;
 
 
 45
 "VII.
 
 
 46
 "Failure of trucker to have hauling permits, licenses or franchises has no causal connection with injuries sustained as a result of a truck driver's negligence and/or physical defects, whereby failure to have required permits is not `unlawful' so as to come within the exceptions to the general rule of non-liability. See Barsh v. Mullins, Administrator, supra;
 
 "VIII.
 
 47
 "That a shipper is under no duty to inquire into the qualifications of an independent motor carrier's driver and has no duty even to exercise reasonable care in his selection. * * *;
 
 
 48
 "IX.
 
 
 49
 "In Oklahoma a shipper has no duty to ascertain whether an independent hauler has complied with applicable motor vehicle laws. * * *.
 
 
 50
 * * * * * *
 
 
 51
 "XII.
 
 
 52
 "That under the findings of fact, the shipper was not itself a private carrier so as to come within the regulatory provisions of 49 U.S.C.A. Section 303(a) (17). See United States of America v. Drum, 368 U.S. 370, 82 S.Ct. 408, 411, 7 L.Ed.2d 360 (1962). See also Barsh v. Mullins, supra."
 
 
 53
 The court entered its order sustaining the motion and dismissing the action as to Cook. Pierce and Ellenwood have appealed.
 
 
 54
 In the order of dismissal, the court found in each case that there was no genuine issue of material fact between the plaintiffs and Cook. In their brief, counsel for plaintiffs state that such finding is not questioned on this appeal.
 
 
 55
 In their complaint, plaintiffs predicated the liability of Cook on the alleged fact that at the time of the collision Edwards was acting as the agent, servant or employee of Cook. They no longer rely on such relationship and concede that the court's finding that the relationship between Edwards and Cook was that of an independent contractor is correct.
 
 
 56
 While they did not amend their complaint, they asserted in the trial court and now assert that in order to carry out the national policy and purposes of Congress in enacting Part II of the Interstate Commerce Act (the Motor Carrier Act), 49 U.S.C.A. § 301, et seq., it is necessary to determine the liability of Cook under the facts in the instant case in accordance with federal common law and not by the law of the state in which the collision resulting in decedent's death and Ellenwood's injuries occurred.
 
 
 57
 Hence, we turn to the provisions of the Motor Carrier Act, and will set out the parts thereof that we deem pertinent.
 
 49 U.S.C.A. § 302(b) provides:
 
 58
 "(b) Nothing in this chapter shall be construed to affect the powers of taxation of the several States or to authorize a motor carrier to do an intrastate business on the highways of any State, or to interfere with the exclusive exercise by each State of the power of regulation of intrastate commerce by motor carriers on the highways thereof."
 
 
 59
 49 U.S.C.A. § 303(b) (6) in part here pertinent provides:
 
 
 60
 "(b) Nothing in this chapter, except the provisions of section 304 of this title relative to qualifications and maximum hours of service of employees and safety of operation or standards of equipment shall be construed to include * * * (6) motor vehicles used in carrying property consisting of * * * agricultural (including horticultural) commodities (not including manufactured products thereof), if such motor vehicles are not used in carrying any other property, or passengers, for compensation: * * *."
 
 49 U.S.C.A. § 304(a) (3) provides:
 
 61
 "(a) It shall be the duty of the Commission —
 
 
 62
 * * * * * *
 
 
 63
 "(3) To establish for private carriers of property by motor vehicle, if need therefor is found, reasonable requirements to promote safety of operation, and to that end prescribe qualifications and maximum hours of service of employees, and standards of equipment. In the event such requirements are established, the term `motor carrier' shall be construed to include private carriers of property by motor vehicle in the administration of subsection (c) of this section and sections 305, 320, 321, 322(a), (b), (d), (f), and (g), and 324 of this title."
 
 49 U.S.C.A. § 303(a) (15) reads:
 
 64
 "(15) The term `contract carrier by motor vehicle' means any person which engages in transportation by motor vehicle of passengers or property in interstate or foreign commerce, for compensation (other than transportation referred to in paragraph (14) of this subsection and the exception therein), under continuing contracts with one person or a limited number of persons either (a) for the furnishing of transportation services through the assignment of motor vehicles for a continuing period of time to the exclusive use of each person served or (b) for the furnishing of transportation services designed to meet the distinct need of each individual customer."
 
 49 U.S.C.A. § 303(a) (17) reads:
 
 65
 "(a) As used in this chapter —
 
 
 66
 * * * * * *
 
 
 67
 "(17) The term `private carrier of property by motor vehicle' means any person not included in the terms `common carrier by motor vehicle' or `contract carrier by motor vehicle' who or which transports in interstate or foreign commerce by motor vehicle property of which such person is the owner, lessee, or bailee, when such transportation is for the purpose of sale, lease, rent, or bailment, or in furtherance of any commercial enterprise." 49 U.S.C.A. § 322(c) in part here pertinent provides:
 
 
 68
 "(c) Any person, whether carrier, shipper, consignee, * * * or any * * * employee, agent, or representative thereof, who * * * shall knowingly and willfully assist, suffer or permit any person or persons, natural or artificial, to obtain transportation of passengers or property subject to this chapter for less than the applicable rate, fare, or charge, or who shall knowingly and willfully by any such means or otherwise fraudulently seek to evade or defeat regulation as in this chapter provided for motor carrier or brokers, shall be deemed guilty of a misdemeanor and upon conviction thereof be fined not less than $200 nor more than $500 for the first offense and not less than $250 nor more than $2,000 for any subsequent offense."
 
 
 69
 Motor Carrier Safety Regulations promulgated by the Interstate Commerce Commission are set forth in 49 C.F.R., Chapter III, Subchapter B, Parts 390-398, inclusive. Part 394 was promulgated under the authority of sec. 204, 49 Stat. 546, as amended, Sec. 220, 49 U.S. C. § 320, and Part 397 was promulgated under the authority of 18 U.S.C. § 834. The remaining parts of such Chapter III, Subchapter B, were promulgated under the authority of 49 U.S.C. §§ 303, 304. None of them imposes any duty on shippers.
 
 
 70
 From the facts disclosed by the record, it is clear that Cook was neither a "contract carrier" nor a "private carrier" as those terms are defined in the Motor Carrier Act.
 
 
 71
 There is neither allegation nor proof that Cook violated any provision of 49 U.S.C.A. § 322(c) or entered into any conspiracy so to do.
 
 
 72
 Counsel for plaintiffs concede that although the Motor Carrier Act was enacted in 1935, they have been unable to find any decision by a state or federal court which passed upon and sustained the contention they make here.
 
 
 73
 Counsel for plaintiffs cite two cases where a contract carrier was held criminally liable for a violation of 49 U.S.C.A. § 309(a) and a shipper was held criminally liable for aiding and abetting the carrier in so doing. We assume they are cited on the theory that by analogy they lend some support to plaintiff's contention.
 
 
 74
 One case is United States v. Gunn, U. S.D.C. W.D. Ark., 97 F.Supp. 476. In that case, Gunn was charged with engaging in the business of a contract carrier by motor vehicle in interstate commerce on the public highways without an existing permit from the Interstate Commerce Commission authorizing him so to do, in violation of 49 U.S.C.A. § 309(a), and Ozark Packing Company was charged with aiding and abetting Gunn in so doing.
 
 
 75
 At the trial, Gunn entered a plea of nolo contendere and was adjudged guilty. Ozark pleaded not guilty and the case was tried to the court. The facts were stipulated and were as follows:
 
 
 76
 On October 10, 1949, Gunn entered into a lease with Ozark, by which Gunn leased to Ozark for the period of one trip for the transportation of canned vegetables from Ozark, Arkansas, to Jacksonville, Florida, one motor vehicle at a charge below the usual rate for such transportation by a contract carrier. The lease provided that Gunn was to furnish for the operation of such truck the required lubricants and fuel and competent drivers. Like leases were entered into between Gunn and Ozark for the transportation of loads of canned vegetables from Arkansas to Florida.
 
 
 77
 The court found that the transportation of such canned vegetables from Arkansas to Florida was actually carried out by Gunn with trucks operated by drivers employed by him and paid by him, who acted pursuant to his orders and instructions, and in so doing that Gunn engaged in the business of a contract carrier by motor vehicle in interstate commerce and did not have an existing permit from the Interstate Commerce Commission so to do, and that Ozark aided and abetted Gunn in so doing.
 
 
 78
 It is obvious that the purpose of the leases was to enable Gunn actually to so engage in the business of a contract carrier, but to avoid the requirements of 49 U.S.C.A. § 309(a), and to enable Ozark to obtain a reduced rate, and that Ozark knowingly and intentionally aided and abetted Gunn in so doing.
 
 
 79
 Here, Cook did not in any way aid or abet Edwards, the motor carrier, in the operation of a defective truck or in negligently operating such truck, or engage in any conspiracy with Edwards to avoid any of the safety requirements of the regulations promulgated by the Interstate Commerce Commission with respect to motor carriers. Those facts, we think, clearly distinguish the instant case from the Gunn case.
 
 
 80
 The other of the two cases is United States v. J & J Truck Leasing, Inc., U. S.D.C. D.Kan., 258 F.Supp. 105. In that case, Truck Leasing entered into a lease with Lady Baltimore Foods, Inc., for the purpose of enabling Truck Leasing to carry on the business of a contract carrier by motor vehicle in interstate commerce on the public highways without a permit issued to it by the Interstate Commerce Commission, and to enable Baltimore Foods to get the benefit of a reduced rate.
 
 
 81
 Both Truck Leasing and Baltimore Foods were found guilty.
 
 
 82
 That case, in our opinion, is distinguishable from the instant case for the same reasons we stated above with respect to the Gunn case.
 
 
 83
 Plaintiffs rely primarily on two decisions under the Federal Communications Act, which they assert are analogous to the instant case. They are Reitmeister v. Reitmeister, 2 Cir., 162 F.2d 691 and Ivy Broadcasting Co., Inc. v. American Tel. & Tel. Co., 2 Cir., 391 F.2d 486. It should be kept in mind that the field of regulation of communications has been preempted by Congress, and state regulation thereof is thereby excluded. That is not true of the regulation of motor carriers by the Motor Carrier Act or regulations promulgated thereunder.
 
 
 84
 In the latter of the two cases, Ivy Broadcasting, a user of interstate telephone service, brought an action against American Telephone and Telegraph Company for breach of contract and negligence in the rendition of interstate telephone service. American Telephone and Telegraph Company counterclaimed for unpaid interstate telephone service charges. The United States District Court held it lacked subject matter jurisdiction.
 
 
 85
 The Circuit Court of Appeals held that Ivy's claims arose under the Federal Communications Act and were therefore within the jurisdiction of the federal court; and that the counterclaims, to the extent that they were compulsory and to the extent that they were based on tariffs required to be filed by the Federal Communications Commission, also were within the jurisdiction of the federal court. It based federal jurisdiction not on a specific violation of the Act, but held that the Act provided for uniformity of rates and equality of service, and that the duties, charges, and liabilities of telephone and telegraph companies with respect to interstate telephone and telegraph service are governed solely by the federal law, and that the states are precluded from acting in such area.
 
 
 86
 In that case, the action was by a user of interstate telephone service. It would possibly be applicable here if a claim were asserted by a shipper for a breach of contract for carrier service or negligence by the carrier in the performance of such service, or for a claim arising out of amounts due from a shipper to a carrier under rates fixed by the Interstate Commerce Commission, but here we have an action by a third party against the carrier for wrongful death and by another third party for personal injuries.
 
 
 87
 Reitmeister v. Reitmeister, supra, involved damages for the interception and unauthorized disclosure of telephone messages. The question was whether the federal court had subject matter jurisdiction.
 
 
 88
 The Federal Communications Act of 1934, 47 U.S.C.A. § 151 et seq., imposed a criminal penalty for any person who intercepted or published telephone messages. In its opinion, the court said:
 
 
 89
 "* * * Although the Act does not expressly create any civil liability, we can see no reason why the situation is not within the doctrine which, in the absence of contrary implications, construes a criminal statute, enacted for the protection of a specified class, as creating a civil right in members of the class, although the only express sanctions are criminal. * * *"
 
 
 90
 Here, neither the Act nor the regulations promulgated thereunder imposed any criminal sanctions on Cook for the negligence of Edwards, or the defects in the equipment he used. Reitmeister would be applicable in the instant case only if the Motor Carrier Act or regulations promulgated thereunder imposed such criminal sanctions on Cook as a shipper. Hence, we think the decision in Reitmeister is wholly inapplicable in the instant case.
 
 
 91
 There is no language in the Motor Carrier Act indicating any intent of Congress to supersede state tort law with respect to negligence or wrongful death liability of a shipper. Hence, state law governs with respect to Cook's liability in the instant case.[5]
 
 
 92
 Plaintiffs do not assert they would have the right to recover against Cook if Oklahoma law controlled. The common law recognized no right of recovery for wrongful death. Pierce's claim for wrongful death is based on the Oklahoma wrongful death statute, which is in derogation of common law, and Cook's liability thereunder clearly must be determined in accordance with Oklahoma law.
 
 
 93
 We conclude that Cook did not violate any penal provision of the Motor Carrier Act or any penal regulations promulgated thereunder by the Interstate Commerce Commission, nor aid or abet Edwards in violating such a provision or regulation imposing penal sanctions on a carrier; and that the issue of whether Cook was liable to Ellenwood for the negligence of Edwards is controlled by Oklahoma law.
 
 
 94
 We hold that under Oklahoma law, Cook was not liable to either of the plaintiffs for the negligence or wrongful acts of Edwards.
 
 
 95
 Affirmed.
 
 
 
 Notes:
 
 
 [1]
 Hereinafter called decedent
 
 
 [2]
 Hereinafter called Cook
 
 
 [3]
 Claudiatte Pierce and Stephen Ellenwood will sometimes be referred to collectively as plaintiffs
 
 
 [4]
 Such highway runs east and west and is a two-lane highway
 
 
 [5]
 See Rosdail v. Western Aviation, Inc., U.S.D.C.D.Colo., 297 F.Supp. 681; Rogers v. Ray Gardner Flying Service, Inc., 5 Cir., 435 F.2d 1389 (decided November 16, 1970)