No. 96-383

IN THE SUPREME COURT OF THE STATE OF MONTANA

1997


GROUSE MOUNTAIN ASSOCIATES, LTD,
d/b/a GROUSE MOUNTAIN LODGE,

Plaintiff/Petitioner and Respondent,
v.

MONTANA DEPARTMENT OF PUBLIC
SERVICE REGULATION, MONTANA
PUBLIC SERVICE COMMISSION,

Defendant/Respondent and Appellant,

ROCKY MOUNTAIN TRANSPORTATION, INC.,

Intervenor and Appellant.


APPEAL FROM:      District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Ted O. Lympus, Judge presiding.

COUNSEL OF RECORD:

For Defendant-Appellant:
Martin Jacobson, Special Assistant Attorney General, Montana Public
Service                    Commission, Helena, Montana

For Intervenor-Appellant:
Bradley J. Luck, Lucy T. France, Garlington, Lohn & Robinson,
Missoula,                    Montana

For Respondent:
Debra D. Parker, Mikel L. Moore, Murphy, Robinson, Heckathorn &
Phillips,                    Kalispell, Montana


Heard:    April 28, 1997
Submitted:    May 1, 1997
Decided:    July 18, 1997
Filed:

_____

Clerk

Justice William E. Hunt, Sr. delivered the Opinion of the Court.

Appellant Montana Public Service Commission (PSC) and Intervenor/Appellant Rocky Mountain Transportation, Inc., (Rocky Mountain) appeal from the decision issued by the Eleventh Judicial District Court, Flathead County, reversing upon judicial review PSC's declaratory ruling that Grouse Mountain Lodge (Grouse Mountain) is a "motor carrier" subject to PSC regulation.

We affirm the District Court.

There are two issues for our review:

1.    Did the District Court properly employ the applicable standard of review of the PSC's declaratory ruling and final order on reconsideration?

2.    Did the District Court err when it determined that Grouse Mountain is not subject to PSC motor carrier regulation?

BACKGROUND

Grouse Mountain is located in the picturesque mountains surrounding Whitefish, Montana.  The year-round recreational activities around Grouse Mountain attract guests to the lodge from all over the country.  Grouse Mountain owns four passenger vans with which it transports its guests between the lodge and The Big Mountain ski resort (Big Mountain), downtown Whitefish, Glacier International Airport, and the Amtrak railway station.  Grouse Mountain does not advertise or offer transportation services to the general public.  Transportation between the lodge and the airport, railway station, and Big Mountain is free for lodge guests. Guests must pay a nominal fee for transportation between the lodge and downtown Whitefish.

In February, 1993, a rival Whitefish-area business person filed a complaint in the Eleventh Judicial District Court, Flathead County, alleging that Grouse Mountain's guest transportation was subject to PSC motor carrier regulation and requesting that Grouse Mountain be enjoined from further guest transportation until it had obtained an appropriate certificate of authority from PSC.  In response to this complaint, Grouse Mountain filed with the PSC a petition for a declaratory ruling that it was not subject to regulation.  The District Court stayed the complaint pending a resolution of Grouse Mountain's petition.

In a 3-2 decision, the PSC determined that Grouse Mountain's transportation was in part subject to motor carrier regulation and ruled that: Grouse Mountain has a principal non-transportation hotel business; Grouse Mountain may transport its registered guests to and from the lodge and points of connection with common carriers, and this transportation is incidental to the principal non-transportation business; Grouse Mountain cannot lawfully transport registered guests to and from the lodge and any other places

without obtaining a certificate of convenience and necessity from the PSC because such transportation is not incidental to the principal non-transportation business. Grouse Mountain moved the PSC to reconsider its ruling, but also submitted an application for a class "C" certificate of public convenience and necessity, requesting authority to transport lodge guests to all points and places in Flathead County.

In another 3-2 decision, the PSC issued its order on reconsideration, affirming its prior ruling. PSC then scheduled a hearing on Grouse Mountain's class "C" application, which was contested. After the hearing, PSC issued a certificate of public convenience and necessity which authorized Grouse Mountain to transport guests to points of connection with common carriers and the City of Whitefish.

Grouse Mountain appealed PSC's initial declaratory ruling and subsequent order on reconsideration to the Eleventh Judicial District Court, Flathead County. The District Court reversed the PSC, holding that: Grouse Mountain is not a "motor carrier;" Grouse Mountain's transportation activities do not exhibit the characteristics of a "motor carrier;" Grouse Mountain provides "accommodative transportation," which is expressly exempt from regulation; and, finally, that even if Grouse Mountain's transportation activities were arguably within the scope of regulated motor carriage, it would be exempt from regulation according to the "primary business" test. PSC, and Rocky Mountain, as Intervenor, appeal from the District Court's order.

## STANDARD OF REVIEW

The PSC's conclusion that Grouse Mountain is subject to motor carrier regulation is a conclusion of law subject to review in the first instance by the District Court. Section 2-4-501, MCA; 2-4-702, MCA. The standard of review applicable to the PSCþs conclusion is whether the PSC correctly interpreted the law in reaching that conclusion. Steer, Inc. v. Department of Revenue (1990), 245 Mont. 470, 474, 803 P.2d 601, 603.

## ISSUE ONE

Did the District Court properly employ the applicable standard of review of the PSC's declaratory ruling and final order on reconsideration?

The parties do not dispute the standard applicable to the District Court's review of the PSC's decision. In Steer, Inc, this Court held that a district court should review an agency's decision to determine whether the agency's interpretation of the law is correct. Steer, Inc., 803 P.2d at 603. The PSC contends, however, that the District Court improperly employed this standard. Specifically, PSC argues that the court did not sufficiently defer to the PSC's interpretation of its own regulations. In addition, PSC

argues that its ruling had the force of law through the "reenactment doctrine." Finally, PSC argues that the exemptions from motor carrier law claimed by Grouse Mountain should have been narrowly construed by the court.

As to PSCþs first argument, we note that neither we nor the District Court must defer to an incorrect agency decision. As discussed more fully below, the court properly determined that the PSCþs decision was incorrect. PSCþs second argument regarding the þreenactment doctrineþ misses the point. PSC essentially contends that the latest legislative enactments with respect to the law regarding motor carrier regulation were enacted in light of the PSCþs declaratory ruling, are not inconsistent with that ruling or with prior, similar rulings, and are therefore an implicit adoption of PSCþs interpretation of the relevant statutes. However, there is nothing in the legislative enactments that would indicate an adoption of any of the specific aspects of the PSCþs ruling that are under review, particularly the PSCþs application of the þprimary businessþ test to the facts here. Finally, with respect to PSCþs third argument, that exemptions from regulations are to be given narrow interpretation, we note that the PSC has not articulated what a narrow interpretation of the relevant rules and regulations would reveal, except to say that the District Courtþs ultimate conclusions were incorrect. This argument is not persuasive.

We hold that the District Court utilized the proper standard of review, reviewing the PSCþs conclusions to determine whether they were the result of a correct interpretation of the law. We also hold that the court properly applied this standard.

ISSUE TWO

Did the District Court err when it determined that Grouse Mountain is not subject to PSC motor carrier regulation?

The PSC's authority to regulate motor carriers comes from title 69, chapter 12 of the Montana Code. See  69-12-201, MCA. Within that title and chapter, too, are statutory definitions of motor carriers subject to PSC regulation. Section 69-12-101, MCA, provides in relevant part:

Definitions. Unless the context requires otherwise, in this chapter the following definitions apply:

....

(8) "Motor carrier" means a person or corporation, or its lessees, trustees, or receivers appointed by any court, operating motor vehicles upon any public highway in this state for the transportation of passengers, household goods, or garbage for hire on a commercial basis, either as a

common carrier or under private contract, agreement, charter, or undertaking.

The characteristics of a "motor carrier" are described in 69-12-106, MCA: Acts indicative of status as motor carrier. Any person or corporation maintaining a public motor vehicle stand or by sign, symbol, or device or vehicle or clothing or by advertisement holding forth transportation for compensation or soliciting the transportation of persons or property for compensation among the public or soliciting for trips for compensation or providing transportation service to the public under the guise of leasing or buy-sell arrangements shall be deemed, prima facie, a "motor carrier" subject to this chapter. The burden of proof shall be on such person or corporation to disprove such status.

Section 69-12-105, MCA, creates an exception to PSC regulation: Nature of accommodative transportation. An accommodative transportation movement by a person not in the transportation business is not a service for hire even though the persons owning the property transported or persons transported share in the cost or pay for the movement.

In addition, this Court created an exception to PSC regulation in Board of Railroad Commissioners v. Gamble-Robinson Co. (1941), 111 Mont. 441, 111 P.2d 306. In that case, this Court held that the PSC did not have regulatory authority over businesses that used motor vehicles as an incident to their principal business. This Court stated: Thus, the question is whether in enacting the statute the legislature meant merely to supervise and regulate those engaged in the business of transporting persons and property for hire, or also to supervise and regulate all those engaged in other businesses and using motor vehicles purely for the incidental purpose of delivering their own goods in the course of such business. The former would seem to be the clear intent, since the title of the Act expressed an intention to supervise, regulate and control "motor carriers engaged in the transportation by motor vehicles of persons and property for hire" etc. "To engage" is "to embark in a business." (Webster's New International Dictionary, Merriam-Webster, 2d ed.) The defendants are engaged in wholesaling just as ranchers are engaged in ranching. They are not ordinarily understood to be "engaged in" every occupation or activity purely incidental to their business. One engaged in either of those businesses and using motor vehicles for purposes incidental thereto cannot properly be said to be engaged in the transportation of goods ....

Gamble-Robinson, 111 P.2d at 309-10. This "incidental to" rule, or "primary business" test, has been codified in the PSC's administrative rules. See Rule 38.3.1001(3), ARM.
The PSC's rules state that a person is not a motor carrier subject to regulation if his transportation activities are incidental to his principal business. Rule 38.3.1001 (1),

ARM. Transportation activities are incidental when they are in furtherance of, in the scope of, and subordinate to the principal business. Rule 38.3.1001(2), ARM. Therefore, an entity is not subject to PSC motor carrier regulation if it does not meet the definition of "motor carrier," if the transportation it provides is accommodative only, or, if the transportation it provides is merely incidental to its principal business.

We affirm the District Courtþs determination that Grouse Mountain is not subject to PSC motor carrier regulation based on the District Courtþs, and our, conclusion that Grouse Mountain's transportation activities are incidental to its principal business. The key terms which constitute the codified "primary business test" are defined as follows:

(a) "Principal Business" means a business which, in relation to the transportation which is purported to be incidental, is clearly the predominate undertaking or enterprise. It must have a clear economic purpose or objective, identifiable with certainty, in terms of supplying goods or services.

(b) "In the furtherance of " means directly benefiting the principal business by transporting materials, goods, or other property, personnel, customers, clients or other passengers, when such transportation assists in the principal business in achieving its economic purpose or objective. It does not include a benefit to the principal business through transportation merely generating additional profit or like thing.

(c) "In the scope of" means directly within the bounds of the economic purpose or objective of the business. It does not include a transportation activity that is merely a tangent or appendage.

(d) "Subordinate to" means lesser than, minor in comparison to, dependent on, existing because of, and controlled by. It can include transportation important to, even essential to, the principal business. It does not include transportation which is a significant enterprise itself.

Rule 38.3.1002(1), ARM. There is no dispute that Grouse Mountain's principal business is as a hotel or resort. Nor is there dispute that Grouse Mountain's transportation is subordinate to the principal resort business. Moreover, the PSC has already determined that Grouse Mountainþs transportation to common carriers is not subject to regulation. Grouse Mountainþs guest transportation to the airport and to the railway station is therefore not at issue here. However, the PSC contends that Grouse Mountain's transportation of guests between the lodge and Big Mountain and downtown Whitefish is neither in furtherance of nor in the scope of the principal resort business because such

business is essentially providing lodging, food, and beverages to paying guests. We disagree.

The PSC strictly describes Grouse Mountainþs business. Indeed, Grouse Mountain itself, in its petition for declaratory ruling, stated that it provides lodging, food, and beverages for paying guests. Later, however, in its motion for reconsideration, Grouse Mountain explained that its earlier description of itself was incomplete, and that the scope of its business as a guest resort and conference center is much broader than that of a provider of food and lodging. In its brief in support of its motion for reconsideration, Grouse Mountain quoted excerpts from its brochures and other promotional materials which illustrate that Grouse Mountain offers more than just lodging, food, and beverages to its guests:

Grouse Mountain is a four-season resort with activities as spectacular as the surrounding scenery.

....

Our concierge will be pleased to suggest and make arrangements for almost anything youþd like to do: hike, bike, fish, ski, boat, visit Glacier National Park, ski the Big Mountainþs 4000 powdered acres or sail Flathead lake ....

....

Grouse Mountain Lodge is in the Flathead Valley ... golf, skiing, sight-seeing, wildlife, sailing, fishing, restaurants, shopping, Glacier Park, Whitefish Lake, The Big Mountain, Flathead Lake and more. Itþs all either right outside our door, or just minutes away.

Grouse Mountain also explained that it offers ski packages in which þtransportation to and from [Big] Mountain ... [is included].þ Finally, Grouse Mountain stated:

If the record before this commission did not adequately describe or underscore the recreational component to Grouse Mountainþs business, Grouse Mountain has done itself, its guests and this commission a disservice. An accurate description of its business must include not only its food, lodging and beverage service, but also its vital service as a facilitator which assists its guests in experiencing the special recreational activities available to them in the Flathead Valley.

In its order on reconsideration, the PSC acknowledged that þGrouse Mountain promotes and packages recreational ventures for its guests,þ and that þa large part of Grouse Mountainþs business turns on the existence of recreational opportunities.þ Nevertheless, the PSC maintained its position that Grouse Mountainþs transportation to Big Mountain and downtown Whitefish is not exempt from regulation under the primary business test.

On the one hand, the PSCþs characterization of Grouse Mountainþs business is simply unrealistic and too restrictive.  Grouse Mountain is not a chain motel astride an anonymous stretch of interstate, where perhaps a description limited to þprovider of lodging, meals, and beveragesþ would be appropriate.  Grouse Mountainþs proximity to Big Mountain, Glacier Park, and downtown Whitefish is what sets it apart and, indeed, is what attracts guests and conventioneers alike.  As integral to Grouse Mountainþs business as is its provision of food and lodging, so too, perhaps more so, is its ability to provide its guests with the variety of recreational experiences available in the popular Flathead region, particularly Big Mountain and the City of Whitefish.  As a resort in the Flathead Valley of the Northern Rockies, Grouse Mountainþs principal business can appropriately be described as providing food and lodging, as well as recreational experiences, for its guests.

Under this description, it is clear that Grouse Mountainþs transportation of its guests to and from Big Mountain and downtown Whitefish is incidental to its primary business.  Transportation to Big Mountain and downtown Whitefish is þin the furtherance ofþ its principal business in that it directly promotes or advances the business of providing local recreational experiences.  Moreover, transportation of guests to Big Mountain and downtown Whitefish, minutes away from Grouse Mountain, is geographically þin the scope ofþ its principal business.  Finally, transporting guests to these sites, rich in recreational opportunities, is þin the scopeþ of providing guests with local recreational experiences.

On the other hand, even if we were to accept the PSCþs limited description of Grouse Mountainþs business, we would reach the same result, for many of the reasons already stated.  In our view, providing guests of a mountain lodge with access to local recreational experiences is þin the furtherance ofþ the business of providing food and lodging.  The recreational experiences are what bring guests to Grouse Mountain, where they eat, sleep, and drink.  In this way, transporting guests to Big Mountain and downtown Whitefish promotes and advances Grouse Mountainþs business.  Moreover, transporting guests to these two areas would be, geographically speaking, as much þin the scope ofþ Grouse Mountainþs business as would transporting guests to and from Glacier International Airport, which the PSC determined was exempt from regulation under the primary business test.  In addition, the transportation would otherwise be þin the scope ofþ  Grouse Mountainþs business because of the close relationship between attracting guests to the lodge and providing guests with food and lodging.

Whether, technically speaking, Grouse Mountainþs business is merely  providing food and lodging to its guests, or whether its business includes providing recreational experiences to its guests, the result is the same: Grouse Mountainþs transportation of its

paying guests to Big Mountain and downtown Whitefish is exempt from PSC regulation, pursuant to the þprimary business test.þ  In reversing the PSCþs decision to the contrary, the District Court properly determined that the PSCþs interpretation of the law was incorrect.

Affirmed.

/S/  WILLIAM E. HUNT, SR.


We Concur:

/S/  J. A.  TURNAGE

/S/  JAMES C. NELSON

/S/  JIM REGNIER

/S/  W. WILLIAM LEAPHART

/S/ DISTRICT JUDGE WILLIAM NELS SWANDAL
sitting for Justice Terry N. Trieweiler

Justice Karla M. Gray, concurring in part and dissenting in part.


I concur in the Court's opinion on issue one.  I respectfully dissent from that opinion, however, on issue two.  It is my view that the District Court erred in reversing the PSC's determination that Grouse Mountain's transport of its guests to the Big Mountain and downtown Whitefish was motor carriage subject to PSC regulation.  I would reverse the District Court on that issue and reinstate the PSC's decision.

It is important to recognize that the PSC's original determination--and its order on reconsideration--were based on the facts as Grouse Mountain set them forth in its petition for declaratory ruling.  Central among those facts were that, in Grouse Mountain's own words, Grouse Mountain "operates a hotel in Whitefish, Montana" and that its "primary business is providing lodging, food and beverages to paying guests."  Thus, the PSC proceeding did not center on Grouse Mountain as a provider of recreational activities in the greater Flathead area.  That notion was first raised after the PSC issued its declaratory ruling when, in its motion for reconsideration, Grouse Mountain posited that it was, in actuality, a provider of recreational activities; in other words, Grouse Mountain sought to change the entire basis of the proceeding after the fact by changing its description of its primary business.  The PSC recognized that the existence of recreational activities in the area was important to Grouse Mountain's business, but declined to change the nature of Grouse Mountain's primary business.  It noted that, as

a business, Grouse Mountain owns and operates facilities to provide lodging, meal and beverage service; conversely, Grouse Mountain does not, as a business, own or operate facilities which provide recreational activities in the greater Flathead area.

In ruling on Grouse Mountain's petition for judicial review, the District Court accepted Grouse Mountain's expansive new characterization of its business, thus permitting Grouse Mountain to "change the rules after the game."  This Court follows suit, and in doing so permits Grouse Mountain to effectively amend its petition for declaratory ruling after the PSC had rendered its decision.  I would join the PSC in rejecting this ploy by Grouse Mountain and confine our review to whether the transport of guests to the Big Mountain and downtown Whitefish by Grouse Mountain, whose primary business is that of hotel, meal and beverage service, subjects Grouse Mountain to regulation as a motor carrier under applicable regulations, statutes and case law.

Applying the PSC's recently adopted regulations regarding the "principal business" test to Grouse Mountain as a hotel business, I would conclude--as did the PSC--that Grouse Mountain did not bring itself within those regulations so as to avoid falling within the statutory definition of a "motor carrier" contained in  69-12-101, MCA.  In determining whether Grouse Mountain's transporting of guests to the Big Mountain and downtown Whitefish is incidental to its principal hotel business under  38.3.1001, ARM, the pivotal questions are whether that transportation is "in furtherance of, in the scope of, and subordinate to" the principal business.  (Emphasis added.)  The use of the conjunctive "and" indicates that all three of the specified criteria must be met.

Here, it is undisputed that the transportation at issue is "in the furtherance of" the principal business, as defined in  38.3.1002(1)(b), ARM; it directly benefits Grouse Mountain's hotel business by transporting customers and clients in order to "assist the principal business in achieving its economic purpose or objective."  It is my view, however, that Grouse Mountain's transportation services to the Big Mountain and downtown Whitefish are not "in the scope of" its principal business.  " 'In the scope of' means directly within the bounds of the economic purpose or objective of the business.  It does not include a transportation activity that is merely a tangent or appendage."

Section 38.3.1002(1)(c), ARM.  The economic purpose or objective of Grouse Mountain's business is to provide rooms, meals and beverages at a profit.  Ferrying guests to locations some distance away from the hotel facility simply does not come directly within that economic purpose or objective; indeed, given the proclivity of people on vacation to purchase meals and beverages at whatever location they find themselves, the transportation Grouse Mountain provides easily could be said to be directly adverse

to its economic objective. In any event, it is--at best--"a tangent or appendage" to the principal business. Thus, Grouse Mountain does not satisfy the "in the scope of" criterion and, as a result, it is not excluded from regulation by the PSC under 38.3.1001, ARM.

It is also my view that Grouse Mountain's transportation activities do not meet our Gamble-Robinson test or any statutory exclusion or exemption from the definition of "motor carrier" contained in 69-12-101, MCA. Since the Court mentions these other authorities, but does not apply them, I will refrain from belaboring the point by setting forth the analysis under each which would properly result in a conclusion that Grouse Mountain's transportation activities relating to the Big Mountain and downtown Whitefish are subject to regulation by the PSC.

I recognize that the kinds of transportation services Grouse Mountain provides are probably being provided by many other hotel businesses. I also recognize that some might question the propriety of laws and regulations governing such transportation activities in today's society. However, the wisdom of those laws and regulations is not the issue before us in this case; the issue is whether Grouse Mountain's transportation of guests to the Big Mountain and downtown Whitefish renders it a "motor carrier" pursuant to applicable statutes and regulations. I conclude that it does and, therefore, I would reverse the District Court on this issue.

/S/ KARLA M. GRAY